540 So.2d 203 (1989)
Eugenio SARDUY, Appellant,
v.
The STATE of Florida, Appellee.
No. 87-1138.
District Court of Appeal of Florida, Third District.
March 21, 1989.
*204 Bennett H. Brummer, Public Defender, and Susan S. Lerner, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Julie S. Thornton, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., JORGENSON, J., and WILLIAM C. OWEN, Jr., Associate Judge.
PER CURIAM.
Eugenio Sarduy appeals from a judgment of conviction and sentences for second degree murder with a firearm and unlawful possession of a firearm while engaged in a criminal offense. For the following reasons, we reverse and remand for a new trial.
On the evening of April 4, 1986, Sarduy, his wife, and two friends met at a bar. One of Sarduy's friends became involved in a brawl and was dragged into the bar's parking lot and beaten. Sarduy, upon hearing someone yell, "Go get the gun," retrieved a gun from his car. Sarduy then shot in the direction of the melee; one shot hit and killed Gabriel Duarte. Sarduy testified that he had fired in his and his friend's defense.
The trial court instructed the jury on second degree murder, manslaughter, and excusable homicide.[1] Over defense objection, the trial court also instructed the jury that "[e]ven though a defendant had no intent to hit or kill anyone, firing a gun into a crowd of people constitutes second degree murder when a person is killed as a result."
The instruction on shooting into a crowd was tantamount to a directed verdict of guilty and requires a reversal of the conviction for second degree murder. Directing a verdict against a criminal defendant is clear error.
A trial court ... has no power to direct a verdict of guilty. An instruction deciding a material fact issue as a matter of law adversely to the accused is regarded as a partial instructed verdict of guilty prohibited by the rule just stated.
Mims v. United States, 375 F.2d 135, 148 (5th Cir.1967) (footnote omitted), citing United Bhd. of Carpenters & Joiners of America v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 782, 91 L.Ed. 973, 985 (1946) ("For a judge may not direct a verdict of guilty no matter how conclusive the evidence."). The instruction given here violated Sarduy's due process rights protected by the Florida and United States constitutions by excusing the state from its burden of proving beyond a reasonable doubt each element of the charged offense. The trial court, in giving the instruction, also usurped the jury's fact-finding function and eliminated any possibility that the jury would find Sarduy guilty of either manslaughter or excusable homicide. See Bowes v. State, 500 So.2d 290 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987) (murder conviction reversed where instructions implied excusable homicide defense unavailable if dangerous weapons involved).
In formulating the instruction on shooting into a crowd, the trial court erroneously relied upon Pressley v. State, 395 So.2d 1175 (Fla. 3d DCA), rev. denied, 407 So.2d 1105 (Fla. 1981). In Pressley, this court *205 held that a defendant who, without justification, had shot into a crowd of people and killed a man was not entitled to a reduction of his second degree murder charge to manslaughter. Although the opinion stated that "[e]ven though a defendant has no intent to hit or kill anyone, firing a gun into a crowd of people constitutes second degree murder when a person is killed as a result," 395 So.2d at 1177, in no way does Pressley suggest that it is proper to so instruct a jury which is charged with determining whether a defendant has committed second degree murder, manslaughter, or excusable homicide. Passages from appellate opinions, taken out of context, do not always make for good jury instructions. See, e.g., Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530, 533 n. 3 (Fla. 1985) ("The fact that a statement of reasoning may be set forth in a judicial opinion does not mean that it is a proper jury instruction.").
After deliberating for 10 1/2 hours, the jury returned guilty verdicts on both charges: second degree murder with a firearm and use of a firearm in the commission of a felony.[2] Both convictions arose from the same shooting incident; the latter conviction was therefore improper under Carawan v. State, 515 So.2d 161 (Fla. 1987). We specifically reject the state's argument that Chapter 88-131, section 7, Laws of Florida (1988), controls this case. The offense with which Sarduy is charged occurred on April 4, 1986; Chapter 88-131 became effective July 1, 1988. Retrospective application would disadvantage Sarduy as he would receive a second conviction and a greater sentence under the new statute which would thus violate the ex post facto clauses of the Florida and United States constitutions. Smith v. State, 539 So.2d 601 (Fla. 3d DCA 1989); Heath v. State, 532 So.2d 9 (Fla. 1st DCA 1988).
Reversed and remanded for a new trial.
NOTES
[1] Second degree murder is "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual ..." § 782.04(2), Fla. Stat. (1987). Manslaughter is defined as "[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification ... and in cases in which such killing shall not be excusable homicide or murder ..." § 782.07, Fla. Stat. (1987). "Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner." § 782.03, Fla. Stat. (1987).
[2] During its deliberations, the jury expressed confusion over the terms "ill will, hatred, spite, or evil intent" in the second degree murder instruction. The court provided the jury with a copy of the American Heritage Dictionary. It is unclear whether defense counsel voiced a proper objection to this procedure. Having reversed the conviction on other grounds, we do not reach the issue of whether a proper objection was lodged. However, we remind the bench and the bar that

the trial court is the only source from which the jurors may properly obtain the law or definition of legal terms applicable to the issue being resolved by them. If members of the jury are permitted access to and use of an unabridged dictionary, a legal dictionary, or Words & Phrases, they may proceed to torture the words in the court's charge from their true meaning.
Grissinger v. Griffin, 186 So.2d 58, 59 (Fla. 4th DCA 1966), citing Smith v. State, 95 So.2d 525 (Fla. 1957).