660 So.2d 293 (1995)
Cathy Ann MAYNARD, Appellant,
v.
STATE of Florida, Appellee.
No. 94-01291.
District Court of Appeal of Florida, Second District.
July 28, 1995.
*294 Robert Fraser, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Helene S. Parnes, Asst. Atty. Gen., Tampa, for appellee.
LAZZARA, Judge.
The appellant, Cathy Ann Maynard, challenges the judgment and sentence imposed upon her after a jury found her guilty of manslaughter in violation of section 782.07, Florida Statutes (1991). She contends that the trial court erred in denying her motion for judgment of acquittal and in failing to give certain proposed "theory of defense" instructions to the jury. We affirm because there was substantial, competent evidence from which the jury could reasonably conclude that the appellant was criminally responsible for causing the death of the victim and the jury instructions, as given, accurately and completely defined the law applicable to her case.
We initially note that the facts are not in dispute, only the legal conclusion to be drawn from those facts. Thus, viewing the evidence in the light most favorable to the state, we begin our analysis with a recitation of the evidence the state adduced at trial.
The victim owned a motel on North Nebraska Avenue in Tampa. On the morning of February 3, 1993, his employee overheard the victim arguing with an unidentified woman in his office about food stamps. A short time later, while the victim was standing in the doorway of one of the rooms he was in the process of cleaning, the appellant came running from behind a tree with clenched fists. She took him by surprise and struck him on the temple, causing him to fall inside the room, where she struck him a second time in the head. The appellant continued her assault, with the victim attempting to ward off any further blows, until his employee and son intervened. According to the employee and the son, the appellant was angry and was cursing, and at one point spat at the victim, but at no time did the victim attempt to strike her back.
The victim, who was emotionally upset and distraught by the appellant's actions, retired to his motel room while the police were called to remove appellant from the premises. Shortly thereafter, and within thirty to forty-five minutes of the altercation with appellant, the victim was discovered in an unconscious state, prompting a call for Emergency Medical Services. Efforts to revive him proved futile, however, and he was pronounced dead of a heart attack at a local hospital. According to one of the EMS representatives, the victim displayed no obvious signs of trauma.
*295 Police officers called to the scene offered testimony establishing that the appellant had a can of beer in her hands, had an odor of alcohol on her breath, appeared to be under the influence of alcoholic beverages, and was verbally abusive. One of them further related that although the appellant denied striking the victim, she did admit being angry at him because he had supposedly purchased food stamps from her boyfriend, who in turn had stolen them from her.
The evidence further established that the victim was seventy-six years of age and had suffered a serious heart attack approximately twenty-three years ago. The evidence revealed, however, that the victim took very good care of himself, was very active, and displayed no outward signs that he was suffering from any type of physical ailment.
Finally, the state presented the expert testimony of an assistant medical examiner to establish the cause of the victim's death. We initially observe that the appellant stipulated to his expertise in the realm of forensic pathology and that he expressed his opinions within the bounds of reasonable medical probability, approaching near certainty.
The medical examiner testified that the victim had severe heart disease which had developed over a period of many years and was "living on borrowed time." He stated, however, that some people with the victim's condition live for months, even years. He then opined that the cause of death was cardiac arrhythmia due to arteriosclerotic heart disease, with the stress from the altercation constituting a contributing cause. Thus, in his opinion, the altercation caused the victim to suffer a fatal heart attack sooner than he inevitably would have. Significantly, he also related that the interval of time between the altercation and the victim's heart attack was within the time period that such an altercation could cause such an attack in someone who had pre-existing heart disease and was subject to having a heart attack at any time.
Finally, the medical examiner testified that the victim was not beaten to death by the use of fists. He did note, however, the existence of two injuries on the victim  a scrape on his neck and a bruise to the back of his hand. He described the second wound as being consistent with an attempt to ward off a blow.
Against this factual scenario, we first consider the appellant's interrelated contentions that the trial court erred in denying her motion for judgment of acquittal because the evidence established, as a matter of law, excusable homicide as well as a lack of criminal causation.
Section 782.03, Florida Statutes (1991), as applied to the facts of this case, provides that "[h]omicide is excusable when committed by accident and misfortune ... upon a sudden combat, without any dangerous weapon being used and not done in a cruel and unusual manner." Contrary to appellant's argument, we conclude that the victim's death did not result from a sudden combat and thus did not constitute excusable homicide under the statute. The evidence clearly establishes that at the time of the attack, the appellant, without provocation, surprised and overwhelmed the victim by striking him twice in the head and that his response was not one of retaliation but of protection. Furthermore, there is no evidence suggesting that the victim, immediately prior to the appellant's unexpected physical battering, exchanged threats or angry words with her or was preparing to engage her in a physical confrontation.[1] Thus, we conclude that there was insufficient proof of an actual or figurative combat between the appellant and the victim to establish excusable homicide as a matter of law. Valencia v. State, 597 So.2d 372 (Fla. 3d DCA 1992); cf. Tipton v. State, 97 So.2d 277 (Fla. 1957) (death of victim from heart attack preceded by "a battle of vituperation, climaxed by rude pushes" constituted excusable homicide and not manslaughter); Aiken v. State, 425 So.2d 641 (Fla. 3d DCA 1983) (same except death of victim caused by striking head on ground).
*296 We also conclude that there was sufficient evidence to establish a criminal, causal link between the appellant's conduct and the victim's death. We begin our analysis of this issue by noting two fundamental principles of Florida law. First, "[c]riminals take their victims as they find them ... and can not be excused from guilt and punishment because [the] victim was weak and could not survive the torture ... administered." Swan v. State, 322 So.2d 485, 487 (Fla. 1975). Second, "[i]n a criminal case expert medical opinion as to cause of death does not need to be stated with reasonable medical certainty. Such testimony is competent if the expert can show that, in his opinion, the occurrence could cause death or that the occurrence might have or probably did cause death." Delap v. State, 440 So.2d 1242, 1253 (Fla. 1983), cert. denied, 467 U.S. 1264, 104 S.Ct. 3559, 82 L.Ed.2d 860 (1984). Furthermore, once admitted, the weight to be given such testimony is a matter to be determined by the jury. Id.
Measured against these standards, we conclude that the trial court was eminently correct in denying appellant's motion for judgment of acquittal and allowing the jury to resolve the issue of causation. First, the fact that the appellant had no way of knowing that the victim suffered from severe heart disease and that this condition could be fatally exacerbated by her criminal conduct does not absolve her of liability for manslaughter. As was noted long ago by the Florida Supreme Court in sustaining a manslaughter conviction based on strikingly similar facts, "the fact that it could not reasonably have occurred to the defendant, or did not occur to him, that death was a probable result of the act, does not prevent a conviction." Baker v. State, 30 Fla. 41, 65, 11 So. 492, 498 (1892), overruled on other grounds, Tipton v. State, 97 So.2d 277 (Fla. 1957). Accord Gainer v. State, 100 Fla. 164, 129 So. 576 (1930).
Secondly, a jury question as to criminal causation was created by the medical examiner's expert testimony based on near medical certainty that a contributing cause of the victim's death was the stress caused by the altercation. See Brate v. State, 469 So.2d 790 (Fla. 2d DCA), review denied, 479 So.2d 117 (Fla. 1985). More important, because the jury resolved that issue against the appellant, it is not our province to overturn that finding, especially when, as in Baker, "[t]he only rational view of the case is that [the victim] was in such a physical condition or state of health as made the assault upon him fatal in its consequences, and that the effect of that assault, acting directly or indirectly upon that condition, brought to a close a life which but for it would have lasted longer." 30 Fla. at 70, 11 So. at 499 (emphasis added). Accordingly, on the facts presented, we conclude that the issue of causation was a jury question, and their conclusion in that regard is reasonably supported by substantial, competent evidence establishing that the appellant's actions materially contributed to the victim's death. See Brate, 469 So.2d at 793 n. 2; Phillips v. State, 289 So.2d 447 (Fla. 2d DCA), cert. denied, 294 So.2d 662 (Fla. 1974).[2]
We finally consider appellant's argument that the trial court erred in declining to give the jury three proposed instructions concerning her theory of defense that she was not criminally responsible for causing the death of the victim. The first instruction provided that "[e]very act causally connected with the killing of a human being is not punishable as manslaughter[,]" citing Tipton, 97 So.2d 277. The second instruction stated that "[c]riminal responsibility for manslaughter should be determined by considering the act that resulted in the death from all of the surrounding circumstances and not from considering the result alone[,]" citing Penton v. State, 548 So.2d 273 (Fla. 1st DCA), review denied, 554 So.2d 1169 (Fla. 1989). The final one, without supporting authority, recited that "[b]efore the intentional act of [appellant] can be found to be manslaughter, the act must be of such a nature that a reasonably prudent person could foresee its resulting in the death of [the victim]."
*297 We recognize the well-settled law of this state that a defendant is entitled to have a jury instructed on the rules of law applicable to a theory of defense if there is any evidence supporting the instruction. E.g., Bedoya v. State, 634 So.2d 203 (Fla. 3d DCA 1994). We also recognize, however, two other fundamental principles which govern the resolution of this issue. One, a trial court should not give instructions which are confusing, contradictory, or misleading. Butler v. State, 493 So.2d 451 (Fla. 1986). Two, a trial court's failure to give a requested instruction will not result in reversal where, taken as a whole, the instructions actually given are clear, comprehensive, and correct. Darty v. State, 161 So.2d 864 (Fla. 2d DCA), cert. denied, 168 So.2d 147 (Fla. 1964). In this case, the application of these principles establishes that the trial court correctly denied the appellant's requested instructions.
The first instruction constituted a restatement, in different words, of the law of excusable homicide which the trial court adequately covered in the instructions to the jury. As the record reflects, the trial court fully explained to the jury the definition of excusable homicide under section 782.03, and further advised them that the appellant could not be found guilty of manslaughter if the killing was excusable homicide as that term had been defined.
The second instruction, although accurately quoting language from Penton, 548 So.2d 273, in which the court was discussing the sufficiency of the evidence to sustain a manslaughter conviction, was likewise unnecessary because the trial court gave a comprehensive definition of the circumstances and elements that the state had to prove before the jury was authorized to convict the appellant of manslaughter. Moreover, as the supreme court has observed, "[t]he fact that a statement of reasoning may be set forth in a judicial opinion does not mean that it is a proper jury instruction." Banker's Multiple Line Ins. Co. v. Farish, 464 So.2d 530, 533 n. 3 (Fla. 1985). See also Sarduy v. State, 540 So.2d 203, 205 (Fla. 3d DCA 1989) ("Passages from appellate opinions, taken out of context, do not always make for good jury instructions.").
Appellant's final requested instruction was misleading and contrary to the law under the facts presented to the jury. As previously noted, the supreme court in Baker, 30 Fla. 41, 11 So. 492, under similar facts, clearly held that the fact that it does not occur to a defendant that a reasonable or probable result of an assault is death of another does not preclude a conviction for manslaughter.
Accordingly, for the reasons expressed, we affirm the appellant's judgment and sentence for manslaughter.
Affirmed.
FRANK, A.C.J., and FULMER, J., concur.
NOTES
[1] It is a reasonable inference that the appellant was the woman the employee overheard arguing with the victim. It is clear from the record, however, that the appellant and the victim physically separated for a brief period of time between the argument and the altercation.
[2] Like the court in Phillips, we determine that the facts of this case are distinguishable from the facts in Tipton, 97 So.2d 277, because "the appellant's conduct was greater in degree than that of the defendants in Tipton." 289 So.2d at 449.