706 So.2d 1363 (1998)
STATE of Florida, Appellant/Cross-Appellee,
v.
Etirza EVERSLEY, Appellee/Cross-Appellant,
No. 96-04693.
District Court of Appeal of Florida, Second District.
January 28, 1998.
Rehearing Denied March 4, 1998.
*1364 Robert A. Butterworth, Attorney General, Tallahassee, and Erica A. Raffel, Assistant Attorney General, Tampa, for Appellant/Cross-Appellee.
James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Bartow, for Appellee/Cross-Appellant.
QUINCE, Judge.
Etirza Eversley was charged with and convicted of manslaughter and felony child abuse arising out of the death of her infant son, Isaiah. In response to Eversley's motion for judgment of acquittal, the trial court overturned the jury's verdict of manslaughter and reduced the child abuse conviction to a misdemeanor. Our review of the record indicates there is sufficient evidence to support the jury's determination of guilt on both counts. Therefore, we reverse the order of the trial court granting the judgment of acquittal and reducing the child abuse charge.
Baby Isaiah was two months old when his mother retrieved him from Carey Barron, the woman to whom she had given him immediately following his birth. Eversley had originally given Isaiah away because she had to work and could not care for him. As evidence of her relinquished custody, Eversley had entered into a written agreement stating that Ms. Barron would be caring for Isaiah. On Sunday, February 4, 1996, Eversley decided to care for Isaiah and went to Ms. Barron's home to retrieve the baby. The evidence regarding whether Isaiah showed signs of ill health at that time is conflicting. Eversley told a police officer that when she picked up Isaiah, Ms. Barron told her he was sick. Ms. Barron, however, testified that he was not sick on Sunday. And, Eversley's aunt, who saw the child around 4:00 p.m. on Sunday, said he was not sick at that time.
Isaiah was clearly exhibiting signs of being ill the next morning. According to Officer James Parry of the Tampa Police Department, Eversley took Isaiah to a nearby clinic to obtain some formula and while there a nurse told Eversley to take Isaiah to the hospital. However, a clerk at the clinic testified that Eversley asked to have a staff member examine Isaiah. A nurse was called and she observed Isaiah and determined that he was having difficulty breathing. Isaiah was breathing in a labored, raspy fashion and "grunting" for breath. The nurse summoned a doctor to further examine Isaiah. Both the nurse and a doctor repeatedly advised Eversley that she must take Isaiah to the emergency room. The nurse specifically told Eversley that the clinic did not have the equipment to verify whether Isaiah had pneumonia and that she must take him directly to the hospital. Both the doctor and the nurse stressed more than once that Isaiah's condition required immediate medical assistance.
In response to their directions, Eversley left the clinic and took Isaiah to the St. Joseph's Hospital emergency room. Upon entering, Eversley noticed there were two or three patients in line ahead of her. Eversley immediately became impatient and left the hospital without attempting to obtain medical aid for Isaiah.
*1365 Around midnight, Eversley attempted to feed Isaiah. He was still having difficulty breathing. Isaiah had exhibited similar breathing difficulty during a prior feeding earlier that evening. Nevertheless, Eversley lay down on her bed with Isaiah and went to sleep. At a few minutes before 3:00 a.m., Eversley's brother came home and she awoke. At that point Eversley noticed Isaiah was not breathing and called her aunt, who directed Eversley to call 911 for emergency assistance.
At approximately 3:05 a.m. on February 6, 1996, the paramedics arrived at Eversley's home. They found Isaiah stiff, cold, without a pulse and with fixed, dilated pupils. He seemed to have been dead for quite some time.
At trial, causation was the pivotal issue. Eversley argued that pneumonia, not her actions, caused Isaiah's death. Following a jury trial and conviction, Eversley again raised the issue of causation. Conflicting testimony over the strain of pneumonia Isaiah had contracted was cited to support statistics regarding the likelihood that a child will die as a result of having pneumonia.
Relying on Bradley v. State, 79 Fla. 651, 84 So. 677 (1920), the trial court found that a parent's failure to provide medical care for a child suffering from an injury or illness is not the legal cause of the child's death; therefore, a charge of manslaughter would not lie in such a case. We believe Bradley is not applicable to the facts of this case; therefore, the trial court's reliance on Bradley was error.
The Bradley decision was premised upon the 1906 manslaughter statute and the state of the law regarding child abuse and neglect at the turn of the century. Since our supreme court authored the Bradley decision, the law has come to recognize the paramount importance of protecting the children under its jurisdiction. To that end, the legislature has enacted extensive child abuse regulations directed at enumerating and criminalizing acts of brutality and neglect perpetrated against children. Florida law specifically recognizes that the failure to obtain medical assistance for a sick child is an act subject to criminal penalties. See, e.g., § 827.04, Fla. Stat. Florida law has advanced considerably from the time when, as the Bradley decision itself acknowledged, "[t]here is no statute in this state specifically making the failure or refusal of a father to provide medical attention for his child a felony...." Id. at 679. Our decision today recognizes that Bradley's reasoning is no longer applicable to this State's view of the criminality of child abuse. Thus, we believe Bradley to be distinguishable and inapplicable to the present case.
We have determined that a defendant may be charged with manslaughter arising out of a failure to obtain medical attention for a child in need of same. However, our analysis does not end there. We must now determine whether Eversley's actions rose to the level of culpability required to support a manslaughter conviction.
Manslaughter may be proven by evidence that a defendant, (i) causes the death of a person, (ii) by culpable negligence, and (iii) without lawful justification. § 782.07, Fla. Stat. (1995). Culpable negligence occurs when a defendant recklessly or wantonly disregards the safety of another. Modern manslaughter cases have broadly construed the causation requirement. Instead of the old "but for" test for causation, causation may be satisfied when a defendant's action is a material contributing factor in the victim's death. Maynard v. State, 660 So.2d 293 (Fla. 2d DCA 1995)(defendant whose victim died of heart attack brought about by assault was guilty of manslaughter).
In this case, the mother's failure to provide the medical attention needed contributed to the baby's death. Eversley testified that Isaiah was "not breathing right" throughout Monday and into the early morning hours of Tuesday. She said he was fussy and not eating. She confirmed that the clinic staff directed her to go immediately to the hospital and that she followed those directions. She further admitted that she failed to obtain medical care for Isaiah at the hospital because she was "impatient" and did not wish to wait until the hospital staff had assisted the two or three people in line ahead of her. Eversley even acknowledged that she was aware that if she had informed the hospital *1366 staff that Isaiah was ill and had been sent there by a doctor, the hospital staff would have taken Isaiah first on an emergency basis. Despite this knowledge, Eversley made no effort to advise the hospital staff of Isaiah's condition.
Eversley attempts to excuse her behavior by alleging that she thought Isaiah only had a cold. However, this argument is belied by the testimony from the nurse at the clinic that she advised Eversley that the clinic's equipment was insufficient to determine whether Isaiah was suffering from pneumonia. Moreover, there is no evidence in the record that Eversley attempted to obtain medication to treat the ailment she allegedly believed Isaiah was suffering, namely a cold. We believe this behavior epitomizes willful and wanton recklessness.
Isaiah was an infant, dependant upon adults to care for his every need. Eversley's behavior demonstrated that she was aware of Isaiah's ill health. Eversley removed Isaiah from Ms. Barron's care, the only other caretaker who could have ensured he got the medical attention he needed. Eversley alone controlled Isaiah's ability to obtain medical assistance. It was for the jury to decide whether Eversley's failure to obtain medical services for Isaiah was a contributing cause of his death. The jury resolved that issue against Eversley.
The various experts who testified in this case concluded that Isaiah had at a minimum, a seventy-five percent chance of survival, depending on the strain of pneumonia he had contracted. Medical science has progressed significantly since the days when "it was not capable of being proven that if the child had had medical attention it would have recovered." Bradley, 84 So. at 679. There was a significant chance that, given medical aid, Isaiah could have survived his bout with pneumonia. Eversley's withholding of medical care eliminated that chance. We are not persuaded that this chance was significantly impacted by Isaiah's weakened immune system. A defendant takes her victim as she finds him. Maynard, 660 So.2d at 296. His condition does not erase the causative connection between Eversley's culpable negligence and Isaiah's premature death.
The jury heard substantial competent evidence from which it could have reasonably concluded that Eversley was criminally responsible for causing Isaiah's death. Id. The trial court's reversal of the jury's verdict upon the authority of Bradley was error.
We also find the trial court's reduction of the felony child abuse conviction to a misdemeanor to be error. Felony child abuse is proven by evidence that a person willfully or by culpable negligence deprives or allows a child to be deprived of medical treatment, and in so doing causes great bodily harm. § 827.04(1), Fla. Stat. Eversley's capricious decision to leave the emergency room, despite her knowledge that she could obtain immediate assistance, evidences a specific and willful intent to deny Isaiah medical services. Nicholson v. State, 600 So.2d 1101 (Fla.1992), cert. denied, 506 U.S. 1008, 113 S.Ct. 625, 121 L.Ed.2d 557 (1992)(defendant who controlled child victim's intake of food and denied the child food offered by others acted willfully); Leet v. State, 595 So.2d 959 (Fla. 2d DCA 1991)(defendant who did nothing to protect child from mother's acts of abuse found culpably negligent). The deprivation in this case was at least a contributing cause of Isaiah's death. The jury appropriately convicted Eversley of felony child abuse.
We hereby reinstate Eversley's convictions for manslaughter and felony child abuse.
ALTENBERND, A.C.J., and FULMER, J., concur.