# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

—————————————————

No. 1D2022-2132

—————————————————

GOIDIA PORTER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

—————————————————

On appeal from the Circuit Court for Leon County.
Stephen S. Everett, Judge.

May 8, 2024

B.L. THOMAS, J.

Appellant challenges his convictions for second-degree murder and carrying a concealed firearm. We affirm the judgment, but we write to discuss the difficulty posed by the elements necessitated to show "depraved mind," as required to convict for second-degree murder. *See* Fla. Stat. § 782.04(2) (2019) (defining second degree murder as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual").

Approximately twenty students from Rickards High School went to Governor's Square Mall to hang out and later see a movie

together. One of these students was the Appellant, who attended armed. Two witnesses at trial testified that he showed them the gun before the movie started; one testified that Appellant repeated several times that he was going to kill someone. The decedent, also a high schooler, joined the group later that night when the movie started.

After the show, the group congregated outside the theater, with some socializing and some waiting on their parents to pick them up. Eyewitnesses described the decedent in these moments as calm, normal, and happy. They reported no indication that any physical altercation might be brewing. One witness testified that Appellant was looking for the decedent after the movie.

Appellant testified that the decedent approached him aggressively, looking to pick a fight. Appellant said he was afraid of the decedent, because the decedent had a reputation for being a good fighter and was affiliated with the Bloods gang. He had seen the decedent pose online with firearms. Another witness told law enforcement later that they believed the decedent "might have been planning to do something," because the decedent believed that "guys from the north side [of Tallahassee] need to stay on the north side." The decedent was from the south side of town; Appellant is from the north side.

It is undisputed that the Appellant pulled out his gun and shot the decedent. The decedent was shot twice, although Appellant maintained that he only fired one shot. The evidence presented at trial, beyond Appellant's own testimony, points to no other shooter.

Upon hearing gunshots, the other students scattered in panic. Those who stayed behind with the decedent called 911 and attempted to render first aid. Unfortunately, they were ultimately unsuccessful, and the decedent passed away at the scene of the crime.

Appellant conceded to law enforcement officers in the aftermath of the shooting that he shot the decedent because the decedent "got under [his] skin."

While in jail awaiting trial, Appellant made a recorded call to an unidentified person in which he performed an original rap song

about the shooting. Lyrics from the rap referenced a cross-town north side versus south side dispute, the "Bloods" gang, and that Appellant and the decedent had been romantically involved with the same girl in the past. Appellant asserts the rap lyrics are factually inaccurate and were written to boost his "street cred."

At trial, the judge denied the defense's motion for judgment of acquittal. The jury submitted a question asking, "Is a depraved mind established by a criminal act?" and asking in parenthesis "Define 'depraved mind.'" The judge responded by instructing the jury that they "have received all applicable instruction on the law regarding this matter." The jury subsequently found Appellant guilty of second-degree murder and carrying a concealed firearm. Appellant argues that the trial court erred in denying his judgment of acquittal, because the State did not prove that he had the depraved mind required to support a second-degree murder conviction.

"In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002) (internal citations omitted). "In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt." *Bradley v. State*, 787 So. 2d 732, 738 (Fla. 2001).

The argument for whether the judgment of acquittal was properly denied turns on whether the State's evidence was sufficient to prove that Appellant had the depraved mind required to commit second-degree murder. A second-degree murder is defined as the unlawful killing of an individual when perpetrated by "any act imminently dangerous to another and evincing a depraved mind regardless of human life, *although without any premeditated design* to effect the death of any particular individual." § 782.04(2), Fla. Stat. (emphasis added). But under interpretations of this statute, to establish that a defendant evinced a depraved mind, a showing of "ill will, hatred, spite, or an evil intent" is required. *Perez v. State*, 187 So. 3d 1279, 1282 (Fla. 1st DCA 2016) (quoting *Poole v. State*, 30 So. 3d 696, 698 (Fla. 2d

3

DCA 2010)). "In most cases, this intent must be inferred from the circumstances." *Perez v. State*, 187 So. 3d 1279, 1282 (Fla. 1st DCA 2016).

This Court has clarified that depraved mind is not limited to ill will, hatred, or evil intent:

> 'Depraved mind' within the second degree murder statute has been variously defined as importing malice in the sense of ill will, hatred, or evil intent, and as an inherent deficiency of moral sense and rectitude. *Ramsey v. State*, 114 Fla. 766, 154 So. 2d 855. It has also been stated that malice is not limited in its meaning to hatred, ill will and malevolence, but 'denotes a wicked and corrupt disregard of the lives and safety of others * * * a failure to appreciate social duty.' 40 Am.Jur.2d, Homicide, Section 50.

*Hines v. State*, 227 So. 2d 334, 335–36 (Fla. 1st DCA 1969) (finding that, although there was no indication of a prior argument between the defendant and his girlfriend, the victim, the defendant's act of pointing the gun at her and "joking" that she should go outside and act like a squirrel and if he killed her, it would not be an accident, showed a "corrupt disregard for human life"). "The distinction between second-degree murder and manslaughter is factually intensive and is 'typically for resolution by a jury.'" *Morrison v. State*, 288 So. 3d 704, 706 (Fla. 4th DCA 2019) (quoting *Larsen v. State*, 485 So. 2d 1372, 1373 (Fla. 1st DCA 1986)).

The inclusion of "ill will" and "evil intent" blurs the line between first- and second-degree murder. Premeditation is a state of mind and must be inferred from the facts and circumstances surrounding a killing, such as the type of weapon being used, prior difficulties between the parties, and statements made by the accused. *Larry v. State*, 104 So. 2d 352, 354 (Fla. 1958). If the State introduces evidence of hatred, ill will, or evil intent, it is that very evidence that the jury could consider in determining whether a killing was premeditated. And, in fact, jurors in this case did express confusion about the definition of "depraved mind."

We note that juries can be understandably confused about the definition of depraved mind as it has been outlined in statute and

4

expanded in case law. For example, the Third District examined a case demonstrating the dilemma trial courts face when confronted with juries confused by the definition of "ill will":

> During its deliberations, the jury expressed confusion over the terms 'ill will, hatred, spite, or evil intent' in the second degree murder instruction. The court provided the jury with a copy of the American Heritage Dictionary. . . . However, we remind the bench and the bar that
>
>> the trial court is the only source from which the jurors may properly obtain the law or definition of legal terms applicable to the issue being resolved by them. If members of the jury are permitted access to and use of an unabridged dictionary, a legal dictionary, or Words & Phrases, they may proceed to torture the words in the court's charge from their true meaning.

*See Sarduy v. State,* 540 So. 2d 203, 205 n.2 (Fla. 3d DCA 1989) (quoting *Grissinger v. Griffin*, 186 So. 2d 58, 59 (Fla. 4th DCA 1966)). The trial court instructed the jury that "[e]ven though a defendant had no intent to hit or kill anyone, firing a gun into a crowd of people constitutes second degree murder when a person is killed as a result." *Id.* at 204. The Third District reversed the conviction, characterizing the instruction as a directed verdict of guilty in violation of the defendant's due process rights. *Id.* at 205.

Regardless, in the instant case, looking at the evidence in the light most favorable to the State, we find that the State presented sufficient evidence from which a rational trier of fact could have found the existence of ill will, hatred, spite, or evil intent beyond a reasonable doubt.

Specifically, the State presented testimony that Appellant told a witness he was going to kill someone hours before the shooting, and that after the movie, he was looking for the decedent. The State also presented evidence suggesting animosity between the Appellant and decedent, such as cross-city rivalry, and the existence of a shared ex-girlfriend. Appellant's own rap lyrics suggested these reasons motivated the killing. He conceded to law enforcement officers that he shot the decedent because the

decedent "got under [his] skin." And, by shooting twice at close range, Appellant certainly demonstrated disregard for human life.

Therefore, the judgment of acquittal was properly denied.

AFFIRMED.

OSTERHAUS, CJ., and NORDBY, J., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jessica J. Yeary, Public Defender, Pamela D. Presnell, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.