777 So.2d 1073 (2001)
Philip WEIR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3896.
District Court of Appeal of Florida, Fourth District.
January 17, 2001.
Rehearing Denied March 9, 2001.
*1074 Michael D. Gelety, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jan E. Vair, Assistant Attorney General, Fort Lauderdale, for appellee.
STONE, J.
We affirm Weir's conviction and sentence on the charge of manslaughter by culpable negligence, addressing two points which merit our attention: the denial of the motion for judgment of acquittal and the special jury instruction on pre-existing injury.
The trial record reflects that the victim, Michael Martin, had stayed at his sister's apartment. Weir and his wife were also overnight guests. Martin injected himself into an argument that occurred between Weir and his wife, telling Weir that he was upsetting his wife, and that he should calm down, go outside, and take a walk. Weir responded, "Don't tell me what to do with my wife, or don't tell me how to treat my wife." At some point in the argument, Weir raised his arm and punched Martin right between the eyes. At the time Weir struck him, Martin's hands were down by his side.
The punch, described as loud and sounding like a water balloon, caused the victim to fall backward, his head swung back, and he hit his back against the kitchen counter. The victim got up, took about two or three steps toward Weir, then collapsed forward toward the coffee table; he was transported to the hospital, never recovered, and died when taken off life support several days later.
Detective Shawn Barber testified that he took a videotaped statement from Weir. In the statement, Weir stated that he hit Michael because he had told him to get out. When asked if Michael had held up his hands or swung at him, Weir responded, "He just ... told me to get out."
The victim's sister testified that several years prior to this incident, her brother was involved in an auto accident and suffered a head injury. The accident was not serious; however, Martin, who walked away from it, was treated at the emergency room with stitches to his head.
Dr. Price, the associate medical examiner, testified that Martin suffered a subarachnoid hemorrhage and a subdural hemorrhage, but she found no aneurysm. She stated that when there is an injury to the brain which makes the brain move back and forth, the vessels which connect the dura to the brain become torn, causing the hemorrhage. In this case, the primary bleeding area was at the base of the brain. She found a laceration at the junction, which she believes was caused by the acceleration and deceleration suffered as a result of the blunt trauma.
Price gave her opinion that the cause of death, within a reasonable degree of medical certainty, was the "subarachnoid and subdural hemorrhage of the brain stem due to laceration of the medullo-pontine junction." She stated that the manner of death was by blunt head trauma as the result of a homicide. Furthermore, the mechanism of the manner of death was the "blow to the face."
Price stated that it is possible for one punch to knock someone out, and it is unnecessary to have multiple punches for the victim to become unconscious. Price further testified that she was aware of the victim's prior accident, but stated that did not change her opinion as to his cause of death. She further stated that Martin had no previous fracture or defect of his brain or brain stem.
Dr. Leestma, a forensic neuropathologist, testified on behalf of Weir. He agreed with Price that the cause of death was subarachnoid hemorrhage, but felt that the victim's prior head injury was significant in that it could have caused an aneurysm. Leestma stated that because ruptured aneurysm is the most common cause of acute hemorrhage at the base of the brain *1075 in a younger person, he tried to determine if an aneurysm was present in this case; however, he was unable to make that determination. Because Leestma was not able to eliminate the possibility that an underlying aneurysm causing the subarachnoid hemorrhage, he stated, "That's a possibility that in the course of the fall, the blunt head trauma, an aneurysm ruptured or was torn." However, notwithstanding the foregoing, Leestma agreed that blunt force trauma to the head was the reason for the subarachnoid hemorrhage, and that the blunt trauma was the punch to the victim's head and the posterior impact that may have followed.
In the charge conference, the state requested a special jury instruction pertaining to causation and pre-existing injury. The trial judge declined to give the state's requested instruction, but, over defense objection, fashioned his own instruction and charged the jury regarding pre-existing injury, as follows:
You have heard evidence of a preexisting injury to Michael Martin. Defendants take their victims as they find them and cannot be excused from guilt because of a victim's condition alone.
We first address the denial of Weir's motion for judgment of acquittal. Manslaughter is defined by Florida Statutes as:
(1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification... and in cases in which such killing shall not be excusable homicide....
§ 782.07, Fla.Stat.
Excusable homicide is defined by Florida Statutes as homicide:
when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

§ 782.03, Fla.Stat. (emphasis added)
Weir argues that the trial judge should have granted his motion for judgment of acquittal because the punch which eventually led to Michael Martin's demise was excusable, having resulted from a single punch which took place in a sudden episode of unarmed combat between two middle-aged, long-time friends of equal physical stature. The record supports Weir's assertion as to the single punch, absent weapons, and that the defendant and victim were of similar stature; however, the individuals were not long-time friends and the punch was not a result of "combat" between the two men.
In Tipton v. State, 97 So.2d 277 (Fla. 1957), the supreme court, discussing criminal responsibility for manslaughter, stated,
Consideration of the act in its surroundings at the time of its commission, not of the results alone, should determine criminal responsibility for manslaughter under the Florida homicide statute.
* * *
It is clear ... that every act causally connected with the killing of a human being is not punished by the homicide chapter, and more specifically, not by the general manslaughter statute.
Id. at 282.
In Valencia v. State, 597 So.2d 372 (Fla. 3d DCA 1992), where "the defendant unexpectedly turned and struck the deceased in the face with defendant's fist, while the two were walking toward the kitchen in the house of a third party, causing the deceased to fall and hit his head on the floor which led to his death," the court held this was "in no sense an excusable homicide upon a sudden combat," and that the case was a classic case of manslaughter. See id. We deem the circumstance here as virtually identical to that in Valencia, with the exception that, in Valencia, the defendant and victim had not exchanged *1076 angry words. In this case, as in Valencia, the punch was not a part of sudden combat; Martin was not engaged in any type of combat with Weir and had merely pointed to the door while angrily telling Weir to leave the premises.
We have considered, but distinguish, Aiken v. State, 425 So.2d 641 (Fla. 3d DCA 1983). In Aiken, the defendant and the victim engaged in a verbal altercation which escalated into mutual pushing with the defendant shoving the victim to the ground, whereupon he died from the impact. See id. The court, following Tipton, reversed the judgment of conviction because the defendant, like the defendant in Tipton, had "administered nothing more than a `rude push.'" Here, however, Weir's punch was hardly a "rude push," nor did the victim engage in any type of physical assault on Weir. Hence, Aiken does not support reversal here.
While the facts in this case bear some similarity to those in Tipton, the court's discussion regarding the shove and whether or not it was indicative of mutual combat related to the propriety of the jury instruction and not whether proof of that conduct required the trial court to grant a directed judgment of acquittal. See id. Therefore, even though the facts of this case are similar to Tipton, that case does not support reversal for denying the motion for judgment of acquittal.
Weir also argues that the record lacks proof that Weir's punch was the cause of Martin's death. Viewed in the light most favorable to the state, see Lynch v. State, 293 So.2d 44 (Fla.1974), causation was established in this case by the testimony of Dr. Price, which showed that the single punch to the victim's head was the blunt trauma which caused the subarachnoid and subdural hemorrhage which, in turn, caused the victim's death. Weir attempted to refute causation by trying to establish that the victim's prior closed head injury may have made him more susceptible to death from the punch. However, even if that were true, Weir would not be excused from legal responsibility as it is well-settled that he takes his victim as he finds him. See Swan v. State, 322 So.2d 485 (Fla.1975). Therefore, viewing the facts in the light most favorable to the state, it was established that but for the punch, Martin would not have died.
In Eversley v. State, 748 So.2d 963 (Fla.1999), the court recognized that in addition to establishing causation in fact, the state must "demonstrate that the defendant's conduct was the `proximate cause' of the particular harm." Id. at 967. The court noted that
Florida courts have considered two basic questions in determining proximate cause: (1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result.
Id. As to the first question, Dr. Price's testimony that a single punch can cause the type of injury and death which occurred here satisfied that element. See Brate v. State, 469 So.2d 790 (Fla. 2d DCA 1985)(medical examiner's testimony that defendant's "boot stomp" was probable cause of death held sufficient to support jury's verdict of manslaughter). As to the second question, the statutory definition of excusable homicide delineates the instances where conviction for manslaughter would be unjust. See § 782.03, Fla. Stat. Weir's conduct falls within none of the statutorily defined excuses, particularly the one upon which he relies; therefore, the trial court correctly denied Weir's motion for judgment of acquittal.
Weir further argues that the trial judge reversibly erred in giving its instruction on pre-existing injury. We review the trial judge's decision to give a particular jury instruction for abuse of discretion. See Johnson v. State, 747 So.2d *1077 436 (Fla. 4th DCA 1999), noting that reversible error occurs when an erroneous jury instruction is "capable of misleading the jury in such a way as to prejudice the defendant's right to a fair trial." Lewis v. State, 693 So.2d 1055, 1057 (Fla. 4th DCA 1997); see also Gross v. Lyons, 721 So.2d 304 (Fla. 4th DCA 1998)(erroneous or incomplete jury instruction reversible if confusing or misleading), decision approved, 763 So.2d 276 (Fla.2000).
As noted above in the context of our discussion on the denial of Weir's motion for judgment of acquittal, the instruction given in this case accurately stated the well-settled law with respect to preexisting injury and causation. See Swan v. State, 322 So.2d at 487 ("Criminals take their victims as they find them. Appellant can not be excused from guilt and punishment because his victim was weak and could not survive the torture he administered."). A pre-existing injury which makes one more likely to die as a result of the blow rendered by the defendant does not excuse a homicide. See id.
In this case, the state's expert found that the blunt trauma caused a pontomedullary avulsion which resulted in brain hemorrhage causing the victim's death. Weir's expert differed in that he stated that the victim may have had an aneurysm which may have ruptured as a result of the blunt trauma, causing the brain hemorrhage and death. Regardless of the presence or absence of an aneurysm, both experts stated that it was the blunt trauma that set off the chain of events. Therefore, even if a ruptured aneurysm, rather than the ponto-medullary avulsion, caused the hemorrhage, the pre-existing condition would not excuse Weir.
Recently, in Fecske v. State, 757 So.2d 548 (Fla. 4th DCA), rev. denied, 776 So.2d 276 (Fla.2000), we reversed a conviction for unlawful blood alcohol (UBAL) manslaughter because we deemed a special jury instruction given on the issue of causation to be an improper comment on the evidence. See id. In that case, the victim died from a combination of pneumonia and multiple blunt trauma; however, the pneumonia had not been diagnosed at death, and the medical examiner was unable to state whether the victim would still be alive had the pneumonia been correctly diagnosed, and presumably treated, prior to death. The trial court instructed the jury as follows:
If you find from the evidence that [the victim's] initial injuries were proximately caused by Robert Fecske's actions, then any alleged lack of affirmative medical treatment of [the victim] does not constitute an intervening cause relieving Robert Fecske of responsibility for [the victim's] death.
Id. at 549. We noted in Fecske that the instruction accurately restated the law that lack of affirmative medical treatment would not constitute an intervening cause relieving a defendant of criminal responsibility for the victim's death. See id., (citing Barnes v. State, 528 So.2d 69 (Fla. 4th DCA 1988)). Nevertheless, we reversed, holding that the instruction unfairly commented on the evidence and essentially directed a verdict on this defense in favor of the state. See 757 So.2d at 549.
While we have considered Fecske, we deem the facts in that case distinguishable. The instruction here was also an accurate statement of the law, see Swan, but merely gave the jury a general statement of the law with respect to pre-existing injury, stating that it alone would not excuse a defendant from guilt, allowing for the possibility that pre-existing injury along with other facts may constitute a defense. By contrast, in Fecske, the trial judge told the jury that intervening lack of affirmative medical care would not relieve Fecske of responsibility for the victim's death, essentially directing a verdict in favor of the state on the question of causation. See id. We, accordingly, hold that the jury instruction in this case did not impermissibly direct a verdict on the issue of causation.
*1078 As to all other issues raised, we also find either harmless error or no reversible error or abuse of discretion.
GUNTHER and POLEN, JJ., concur.