# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20482

United States Court of Appeals
Fifth Circuit

**FILED**

February 23, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JUAN GARCIA-PEREZ, also known as Juan Garcia, also known as Johnny Garcia, also known as Guadalupe Garcia

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINBOTHAM, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Juan Garcia-Perez was convicted of being illegally in the United States after deportation following commission of an aggravated felony. The district court applied a 16-level increase to the base offense level because it determined Mr. Garcia-Perez's prior manslaughter conviction was a "crime of violence" under Sentencing Guideline § 2L1.2(b)(1)(A). Mr. Garcia-Perez argues that manslaughter as defined by the Florida statute of conviction does not qualify as a crime of violence, and thus the increase was error. We agree, vacate, and remand for resentencing.

## I.

Juan Garcia-Perez was brought to the United States as an infant in

No. 13-20482

1969. In 1996, Mr. Garcia-Perez pled no contest to manslaughter under Florida Statute § 782.07. He was deported and re-entered the United States several times. In 2013, Mr. Garcia-Perez pled guilty without a plea agreement to being an alien unlawfully present in the United States after deportation following an aggravated felony. The probation officer calculated the base offense level as 8 under United States Sentencing Guidelines § 2L1.2(a) (2012) and increased the base level by 16 under § 2L1.2(b)(1)(A)(ii) because she found that the 1996 Florida manslaughter conviction was a "crime of violence." After an acceptance of responsibility adjustment, the final offense level was 21.

Mr. Garcia-Perez objected to the 16-level increase in the PSR on the ground that manslaughter as defined by the Florida statute was not a "crime of violence." At sentencing, defense counsel renewed Mr. Garcia-Perez's objection, but the district court overruled it. The court sentenced Mr. Garcia-Perez to 87 months in prison, the top of the guideline range, noting that it was tempted to depart upwards, but not doing so.[1]

II.

"Generally, this Court reviews the district court's application of the Sentencing Guidelines *de novo*…. When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only."[2] In contrast, an argument is preserved when the basis for objection presented below "gave the district court the

---

[1] ROA.68

[2] *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003). Objections supported below by a given argument cannot preserve a completely different argument on appeal. *See, e.g., United States v. Tang*, 718 F.3d 476, 480-82 (5th Cir. 2013) (argument below that restriction would prevent defendant accessing Internet did not preserve argument on appeal that district court failed to explain the reasons for the restriction); *United States v. Ellis*, 720 F.3d 220, 224, 227 (5th Cir. 2013) (argument below that restriction imposed was excessive did not preserve argument on appeal that restriction was vague).

No. 13-20482

opportunity to address" the gravamen of the argument presented on appeal.[3] The "objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction."[4]

The government argues that Mr. Garcia-Perez has changed his argument on appeal, and that we should review only for plain error. We disagree. On appeal, as below, Mr. Garcia-Perez argues that the 16-level increase did not apply because the prior conviction which qualified him for the enhancement was not a "crime of violence" under the Sentencing Guidelines. Both below and on appeal, his argument was that Florida's manslaughter definition has no element of force and is not equivalent to "generic contemporary manslaughter." While his argument has been refined on appeal,[5] its essence was fairly presented to the district court. As such, we review *de novo*.

## III.

United States Sentencing Guidelines Manual § 2L1.2(b)(1)(A) (2012) provides for a 16-level increase if "the defendant previously was deported … after … a crime of violence."[6] As the proponent of the increase, it is the government's burden to establish "a factual predicate justifying [the]

---

[3] *United States v. Ocana*, 204 F.3d 585, 588-89 (5th Cir. 2000) (argument preserved where, although defendant "did not specifically cite to the USSG section which the PSR applied, she did make a general objection that notified the court of her disagreement with the use of [a prior] offense in her sentencing"); *see also, e.g.*, *United States v. Cortez-Rocha*, 552 F. App'x 322, 324 (5th Cir. 2014) (objection to crime-of-violence enhancement preserved issue for appeal, although it was "short of the specific articulation and citation to authority of the arguments before us").

[4] *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009).

[5] Most saliently, in his earlier objection Mr. Garcia-Perez took no position on which of the three ways of committing Florida manslaughter was the "least culpable" and addressed them all. On appeal, he takes a position on which prongs represent the "least culpable" acts under the statute and focuses on those prongs.

[6] Other prior felony convictions receive smaller increases. United States Sentencing Guidelines Manual § 2L1.2(b)(1)(B)-(D) (2012).

sentencing adjustment, here that the offense constitutes a crime of violence."[7] An offense may qualify as a crime of violence for these purposes in one of two ways: it must either have an element of force or it must fall within the "generic contemporary meaning"[8] of one of the specifically listed offenses.[9] Thus, if the Florida manslaughter offense either has an element of force or falls within the generic contemporary meaning of the term "manslaughter," which appears in the list of qualifying offenses, it is a crime of violence.

In determining whether the Florida offense qualifies for the enhancement, "we look to state law to determine the offense's nature and whether its violation is a crime of violence under federal law."[10] We also "look[] to the elements of the crime, not to the defendant's actual conduct in committing it.'"[11] Thus we focus on the statute of conviction, though we may also consult "charging papers to see which of [] various statutory alternatives were involved in a particular case."[12] Here, the parties agree that the statute of conviction is Florida Statute § 782.07(1). At the time of the offense, it stated:

> The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall

---

[7] *United States v. Herrera-Alvarez*, 753 F.3d 132, 135 (5th Cir. 2014) (internal brackets omitted) (quoting *United States v. Bonilla,* 524 F.3d 647, 655 (5th Cir.2008)); *see also United States v. Hagman*, 740 F.3d 1044, 1048 (5th Cir. 2014) ("'The government must prove sentencing enhancements by a preponderance of the evidence.'"); *United States v. Herrera-Solorzano,* 114 F.3d 48, 50 (5th Cir. 1997) ("The burden is on the party seeking to adjust the sentence level to prove 'by a preponderance of the relevant and sufficiently reliable evidence the facts necessary to support the adjustment.'").

[8] *See* Part III.B infra.

[9] *See* United States Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii); *United States v. Rayo-Valdez*, 302 F.3d 314, 316 (5th Cir. 2002).

[10] *Herrera-Alvarez*, 753 F.3d at 137 (quoting *United States v. Martinez–Flores,* 720 F.3d 293, 297 (5th Cir.2013)).

[11] *United States v. Andino-Ortega*, 608 F.3d 305, 309 (5th Cir. 2010) (quoting *United States v. Calderon-Pena,* 383 F.3d 254, 257 (5th Cir. 2004) (en banc); *see also Herrera-Alvarez*, 753 F.3d at 137-38.

[12] *Andino-Ortega*, 608 F.3d at 309 (quoting *Calderon-Pena*, 383 F.3d at 258); *see also Herrera-Alvarez*, 753 F.3d at 138.

No. 13-20482

not be excusable homicide or murder, according to the provisions
of this chapter, shall be deemed manslaughter and shall constitute
a felony of the second degree….[13]

The current version of the section has been amended slightly for form, but remains essentially the same.

## A.

We first consider whether the Florida manslaughter offense has an element of force.[14] In order to qualify an offense as a crime of violence under the force prong, "the intentional use of force must be a constituent part of [the prior offense] that must be proved" to convict.[15] "The 'force' necessary under this provision must rise to the level of 'destructive or violent force.'"[16]

Florida courts have repeatedly set out the elements that must be proved to convict under the manslaughter statute, and an element of force makes no appearance. Rather, the state must show that "(1) the victim is dead, (2) the death was caused by the act, procurement or culpable negligence of the defendant, and (3) the killing was not justified or excusable homicide."[17] A Florida manslaughter conviction simply does not require proof of force.

Bolstering this conclusion, we have previously held that an "injury to a

---

[13] Fla. Stat. § 782.07(1) (1995).

[14] Mr. Garcia-Perez argues that it does not, and the government does not attempt to show otherwise.

[15] *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (internal quotation marks omitted); *see also United States v. Castaneda*, 740 F.3d 169, 172-73 (5th Cir. 2013) (unpublished) (finding that a Texas burglary statute did not contain "as an element the use, attempted use, or threatened use of force").

[16] *Herrera-Alvarez*, 753 F.3d at 137.

[17] *State v. Richards*, 639 So. 2d 680, 681 (Fla. Dist. Ct. App. 1994); *see also Cunningham v. State*, 385 So. 2d 721, 722 (Fla. Dist. Ct. App. 1980) ("[T]he two affirmative elements … are (1) the killing; and (2) a causative link between the death of the victim and the act, procurement, or culpable negligence of another."); *see also State v. Montgomery*, 39 So. 3d 252, 256 (Fla. 2010) ("[W]here one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter."); *Eversley v. State*, 748 So. 2d 963, 965-66 (Fla. 1999) (defining elements of culpable negligence manslaughter).

child" offense defined in terms of the causation of injury by intentional act did not contain a force element.[18] This was because "[i]f any set of facts would support a conviction without proof of that [force] component, then the component most decidedly is not an element … of the crime."[19] Intentional injury to a child could be committed by poison, for example, which would not be "use of physical force" for these purposes.[20] This holding logically extends to offenses defined in terms of the causation of *death*, such as the Florida statute at issue. We find that § 782.07(1) does not have an element of force.

## B.

We now turn to the second, closer question: whether Florida's manslaughter provision falls within the list of enumerated "crimes of violence" for purposes of §2L1.2(b)(1)(A). "Manslaughter" is one of the Guidelines Manual's listed "crimes of violence" which qualify for the contested enhancement,[21] but that observation does not end our inquiry. Rather, we must determine what the Sentencing Guidelines mean by the term "manslaughter" and then decide whether the Florida manslaughter offense falls within that definition.[22] The parties' dispute centers on the mental state required with respect to death by the Florida manslaughter statute, so we focus our discussion on that issue.

Because the Guidelines Manual does not define "manslaughter" as it applies to the crime of violence enhancement at issue, "we must define it according to its generic contemporary meaning, and should rely on a uniform

---

[18] *Andino-Ortega*, 608 F.3d at 310-311.

[19] *Id.* at 311 (quoting *Vargas-Duran*, 356 F.3d at 605).

[20] *Id.*; *see also Herrera-Alvarez*, 753 F.3d at 138-39 (discussing the element of force and poison with regard to a Louisiana aggravated battery statute).

[21] United States Sentencing Guidelines Manual § 2L1.2 cmt. n.1(B)(iii).

[22] *See United States v. Bonilla*, 524 F.3d 647, 655 (5th Cir. 2008) (finding New York offense was not a "crime of violence" where it "criminalize[d] a broader range of conduct than that encompassed by the generic, contemporary offense of manslaughter").

definition, regardless of the labels employed by the various States' criminal codes."[23]  The inquiry is simple for our purposes because we have already held that generic contemporary manslaughter requires a mental state of either intent to kill or recklessness—"conscious disregard of perceived homicidal risk."[24]

### 1.

We proceed to compare the mental state required by generic contemporary manslaughter to that required by the Florida manslaughter statute of conviction.  The parties agree that Mr. Garcia-Perez may have been convicted of manslaughter by act, by procurement, or by culpable negligence. Because the conviction may rest on any one of these three methods,[25] we must determine whether the "least culpable" of the three qualifies as generic contemporary manslaughter.[26]   If the least culpable prong of § 782.07(1) requires either recklessness as to death or intent to kill, then the section as a whole falls within the definition of generic contemporary manslaughter and there was no error in imposing the enhancement.

In *Chan-Gutierrez*, an unpublished opinion, we held that "[t]he least culpable act under the Florida manslaughter statute is manslaughter by

---

[23] *United States v. Dominguez-Ochoa*, 386 F.3d 639, 642-43 (5th Cir. 2004) (internal quotation marks and citations omitted) (referring to the same guideline in the 2002 edition of the manual).  In determining the generic contemporary meaning, we look to sources "such as the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions."  *Herrera-Alvarez*, 753 F.3d at 137 (internal quotation marks omitted).

[24] *Bonilla*, 524 F.3d at 654 (citing *Dominguez-Ochoa*, 386 F.3d at 642, 645-46).

[25] *See, e.g.*, Government Br. 26 ("[I]t is unclear from the "charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual findings by the trial judge to which the defendant assented" what subpart of the statute the defendant violated….") (quoting *United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008)).

[26] *See Moreno-Florean*, 542 F.3d at 449 ("If the statute of conviction cannot be narrowed, we consider 'whether the least culpable act constituting a violation of that statute constitutes 'kidnapping' for purposes of U.S.S.G. § 2L1.2.'") (citing *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315-16 (5th Cir. 2007)).

No. 13-20482

culpable negligence" and that "culpable negligence" is equivalent to generic contemporary manslaughter's "recklessness" requirement.[27]    No party challenges the holding that culpable negligence is equivalent to recklessness. Instead, Mr. Garcia-Perez argues that *Chan-Gutierrez* was mistaken in holding culpable negligence manslaughter to be the least culpable act under § 782.07(1).    To the contrary, he argues that act and procurement manslaughter are less culpable conduct and fall outside of "generic contemporary manslaughter" because they do not require recklessness as to death or intent to kill.

2.

a.

To determine the mental state required for commission of manslaughter by act,[28] we turn to Florida case law.  In line with earlier cases,[29] the Florida Supreme Court recently confirmed in *Montgomery* that manslaughter by act does not require "that the defendant intend to kill the victim.  Instead … where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter."[30]  Driving home the point, the court restated its holding: "the intent which the State must prove for the purpose of manslaughter by act is the intent to commit an act that was not justified or

---

[27] *United States v. Chan-Gutierrez*, 368 F. App'x 536, 538 (5th Cir. 2010).

[28] Because Mr. Garcia-Perez's procurement-prong argument is based on a logical extension of his act-prong argument, we focus on manslaughter by act. *See* Garcia-Perez Initial Br. 26-27.

[29] See the cases discussed in Part III.B.2.b infra.

[30] *State v. Montgomery*, 39 So. 3d 252, 256 (Fla. 2010).  Before 2010, some Florida courts had interpreted *Taylor v. State*, 444 So. 2d 931, 934 (Fla. 1983) to stand for the principle that intent to kill was required to prove act manslaughter. *See Montgomery v. State*, 70 So. 3d 603, 604-06 (Fla. Dist. Ct. App. 2009) (noting and explaining the split in authority). *State v. Montgomery* dispelled this confusion, which arose from statements about intent to kill, attempt, and voluntary versus involuntary manslaughter.  *See id.*

No. 13-20482

excusable, which caused the death of the victim."[31]

b.

*Montgomery* makes clear that intent to kill is not required to prove act manslaughter; it does not state whether recklessness as to the risk of death is required. The silence as to recklessness in *Montgomery* leaves undisturbed a line of cases stretching back over one hundred years which have held that unexpected deaths caused by intended acts can be enough to prove manslaughter.

In 1892 in *Baker v. State*, considering an earlier, but similar,[32] manslaughter statute, the Florida Supreme Court rejected the idea that death "must have been not only directly or indirectly caused by the acts of the defendant, but must have been such as to be one of the reasonable or probable results of such acts."[33] Rather, "the fact that it could not reasonably have occurred to the defendant, or did not occur to him, that death was a probable result of the act, does not prevent a conviction of manslaughter."[34] In 1930, the Florida Supreme Court reaffirmed *Baker* in a case where a 16-year-old girl shot her husband in the leg, after which he died of gangrene. The court stated that "the fact that it did not occur to the defendant that the death … was a

---

[31] *Montgomery*, 39 So. 3d at 259-60; *see also Haygood v. State*, 109 So. 3d 735, 741 (Fla. 2013) (noting that instruction on manslaughter by act was appropriate where "the evidence in this case supported a finding that [defendant] intentionally committed an act or acts, and that the act or acts resulted in the victim's death").

[32] *See Tipton v. State*, 97 So. 2d 277, 285 (Fla. 1957) (noting similarities between the manslaughter statute considered in *Baker* and the then-contemporary statute, which is in turn strikingly similar to the present version); *Eversley*, 748 So. 2d at 965-66 (noting that the 1906 version of the manslaughter statute and the 1995 version contained the same elements); *Maynard v. State*, 660 So. 2d 293, 296 (Fla. Dist. Ct. App. 1995) (turning to *Baker* for guidance on the required state of mind of the defendant); *Rodriguez v. State*, 443 So. 2d 286, 289-90 & n.8 (Fla. 1983) (explaining that the basic definition remained unchanged between 1892 and 1983).

[33] *Baker v. State*, 11 So. 492, 498 (Fla. 1892).

[34] *Id.*

reasonable or probable result of the defendant's assault does not prevent a conviction of manslaughter."[35]

In 1957, the Florida Supreme Court decided *Tipton v. State*[36] which, like *Baker*, involved heated words, a battery, and a subsequent death likely related to the victim's underlying health condition.  The court expressed concern at the broad wording of the manslaughter statute,[37] and explained that:

> Consideration of the act in its surroundings at the time of its commission, not of the results alone, should determine criminal responsibility for manslaughter under the Florida homicide statute. It is necessary for the act to result in the death of a human being under the definition of homicide; but this does not relieve the courts of a duty to study the act itself to determine whether the punishment for manslaughter should be applied.[38]

Notwithstanding this caution, the court issued a limited holding rather than drastically altering the interpretation of the manslaughter statute.  The court found that "[t]he statute itself provides [the] guideposts"[39] to determine what acts should be punished as manslaughter, and analyzed the case in terms of those statutory exceptions.  The court concluded that the battery in *Tipton* may have been "excusable homicide" because it constituted a "sudden combat," and overruled *Baker* to the extent that it held the actions in that case were not excusable "sudden combat."[40]  The court also found the state had not provided sufficient evidence to prove a causal link between the battery and death.[41]

*Tipton* signaled that the causation and excuse/justification inquiries were to be taken seriously.  However, the court expressly did not disturb either

---

[35] *Gainer v. State*, 129 So. 576, 577 (Fla. 1930).

[36] 97 So. 2d 277 (Fla. 1957).

[37] *Id.* at 281.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 281-82, 285.

[41] *Id.* at 285.

No. 13-20482

*Baker*'s holding that "the fact that it could not reasonably have occurred to the defendant, or did not occur to him, that death was the probable result of the act, does not prevent a conviction of manslaughter" or *Gainer*'s similar holding[42]  Indeed, the Florida Supreme Court favorably cited *Baker* again in 1975 in *Swan* for the proposition that "Criminals take their victims as they find them."[43]  In the absence of contrary authority, this line of cases establishes that something less than recklessness as to death is required to prove act manslaughter.

c.

In recent years, Florida courts have made clear that the bounds of act manslaughter are not unlimited.  Consistent with *Tipton*'s serious treatment of the causation requirement, the Florida Supreme Court explained that manslaughter convictions require both cause-in-fact and proximate cause showings.[44]  Proximate cause is decided based on an inquiry into "(1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result."[45]  One Florida court of appeals has held that both proximate cause prongs are satisfied where there is medical testimony that a given act "can cause the type of injury and death which occurred" (first prong), and where none of the statutory excuses or justifications are present (second prong).[46]

---

[42] *Id.* at 284 ("[The *Baker*] holding can be granted as valid without affecting the decision in the case at bar, therefore we will not discuss Gainer v. State, supra, which involved the same point.").

[43] *Swan v. State*, 322 So. 2d 485, 487 (Fla. 1975).

[44] *Eversley v. State*, 748 So. 2d 963, 966-67 (Fla. 1999).

[45] *Id.* at 967.

[46] *Weir v. State*, 777 So. 2d 1073, 1076 (Fla. Dist. Ct. App. 2001).

11

No. 13-20482

In addition to the causation inquiry, Florida courts have continued to stress the importance of the excuse and justification exceptions to manslaughter. Because manslaughter is a "residual offense," these exceptions are of fundamental importance to its definition.[47] Killing in defense of self or others is not manslaughter.[48] Neither is accidental killing in the course of lawful acts performed "with usual ordinary caution," accidental killing "in the heat of passion," or accidental killing as a result of "sudden combat" without dangerous weapons.[49] Several cases have focused on defendants who threw a sudden punch at victims, some in the context of teenage disputes, and found that such conduct is not covered by any of the excuses.[50]

Both the causation and excuse/justification inquiries limit the scope of act manslaughter, but neither limits the offense to only acts committed with conscious disregard of a perceived risk of death. Consistent with these limits, the Florida courts of appeals have emphasized the state's causation burden,[51]

---

[47] *Montgomery*, 39 So. 3d at 258; *State v. Lucas*, 645 So. 2d 425, 427 (Fla. 1994).

[48] *See* Fla. Stat. § 782.07(1); *Rojas v. State*, 552 So. 2d 914, 914 (Fla. 1989) (in manslaughter case, setting out lower court's instructions on justifiable homicide and noting that they "essentially track[] the … Standard Jury Instructions"); *Pena v. State*, 829 So. 2d 289, 294 (Fla. Dist. Ct. App. 2002) (reciting standard justifiable homicide instruction).

[49] *See* Fla. Stat. § 782.07(1); *Rojas*, 552 So. 2d at 914 (in manslaughter case, setting out lower court's instruction on excusable homicide which tracked standard jury instruction); *Pena*, 829 So. 2d at 294-95 (reciting standard jury instruction for excusable homicide).

[50] *See J.J.W. v. State*, 892 So. 2d 1189, 1190-92 (Fla. Dist. Ct. App. 2005) (finding that even if victim was killed by initial single punch of teenage defendant, manslaughter conviction was sound where there was evidence defendant threw the punch while victim was unprepared and not a threat); *Acosta v. State*, 884 So. 2d 112, 115 (Fla. Dist. Ct. App. 2004) (evidence supported manslaughter verdict where victim killed by a punch by teenage defendant was unprepared and defendant contemplated fight before it began); *Weir*, 777 So. 2d at 1075-76 (finding single punch which led to death was not excusable where punch was sudden and there was no other physical exchange between defendant and victim).

[51] *Tyus v. State* affirmed a manslaughter conviction where the victim died of heart attack as a result of defendant's burglary. The court did not ask whether the defendant disregarded a known risk but rather whether death was "beyond the scope of any fair assessment of the danger created." 845 So. 2d 318, 321-22 (Fla. Dist. Ct. App. 2003).

*Penton v. State* found evidence that the theft of a bicycle led to release of fat emboli and death of the victim was insufficient to support a manslaughter conviction, in part because

as well as the excuse/justification inquiry,[52] but have not undercut *Baker*'s holding that unanticipated death can support a negligence conviction. Indeed, Florida courts of appeal have continued to find that manslaughter can be committed without conscious disregard of a perceived homicidal risk.[53]

Finally, we note that Florida's Standard Jury Instructions were amended in 2011 to exclude from manslaughter "merely negligent act[s]."[54] This change does not on its face purport to limit act manslaughter to only cases involving conscious disregard of the risk of death.[55] In any event, the amendment did not overturn the cases holding that recklessness as to death is not required to prove manslaughter given that the Florida Supreme Court, in authorizing the instruction, "express[ed] no opinion on its correctness."[56]

---

of equivocal medical testimony. 548 So. 2d 273, 274-75 (Fla. Dist. Ct. App. 1989) (basing its analysis on culpable negligence cases, and part of *Tipton* that dealt with culpable negligence).

*Todd v. State* held that in order to establish causation for manslaughter, the state must prove at least the legal causation required by tort law. 594 So. 2d 802, 805-06 (Fla. Dist. Ct. App. 1992). This standard apparently requires the harm to be "foreseeable" but does not require reckless disregard of a known risk. *Id.* (listing cases which set out the standard).

[52] *See, e.g.*, *J.J.W.*, 892 So. 2d at 1190-92; *Acosta*, 884 So. 2d at 115; *Weir*, 777 So. 2d at 1075-76; *Aiken v. State*, 425 So. 2d 641, 643-44 (Fla. Dist. Ct. App. 1983).

[53] *See Hall v. State*, 951 So. 2d 91, 93, 95-96 (Fla. Dist. Ct. App. 2007) (upholding manslaughter by act conviction where victim's death was a "very unusual" reaction to a single punch to the jaw because it was the unintentional result of an intentional act), *abrogated on different ground*, *Williams v. State*, 123 So. 3d 23 (Fla. 2013); *Maynard v. State*, 660 So. 2d 293, 296 (Fla. Dist. Ct. App. 1995) ("[T]he fact that the appellant had no way of knowing that the victim suffered from severe heart disease and that this condition could be fatally exacerbated by her criminal conduct does not absolve her of liability for manslaughter. … [T]he fact that it could not reasonably have occurred to the defendant, or did not occur to him, that death was a probable result of the act, does not prevent a conviction.") (quoting *Baker*, 11 So. at 498)). *See also* supra note 50, listing cases where act manslaughter convictions were upheld without inquiries into defendants' mental states as to death.

[54] *In re Amendments to Standard Jury Instructions in Criminal Cases--Instruction 7.7*, 75 So. 3d 210, 211 (Fla. 2011).

[55] *Id.* (defining negligence as follows: "Each of us has a duty to act reasonably toward others. If there is a violation of that duty, without any conscious intention to harm, that violation is negligence").

[56] *Id.* ("In authorizing the publication and use of the instruction, we express no opinion on its correctness and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction."). The instruction had not been amended when Mr. Garcia-Perez was convicted.

No. 13-20482

3.

We are persuaded that Florida manslaughter by act covers more than just those acts committed with intent to kill or recklessness as to death. Section 782.07(1) thus falls outside the definition of generic contemporary manslaughter. The unpublished case relied upon by the government does not persuade us otherwise. In *Chan-Gutierrez*, lacking the benefit of the Florida Supreme Court's clarifying *Montgomery* decision,[57] we stated without explanation that culpable negligence was the least culpable conduct under the Florida statute.[58] Then, based on analysis of only the culpable negligence prong, we held that Florida's manslaughter statute "does not punish any conduct beyond that covered by 'generic, contemporary' manslaughter."[59] Having now examined the act prong, we are persuaded that *Chan-Gutierrez* was mistaken insofar as it held that Florida manslaughter by act punishes only "generic contemporary manslaughter."

Additionally, we note that two federal district courts have held that the manslaughter offense is a crime of violence for purposes of the career offender enhancement, but we do not find them persuasive. *Johnson v. United States* did not consider the argument that manslaughter by act does not require proof of recklessness.[60]    *Cook v. United States* based its conclusion entirely on

---

[57] *Montgomery* was published one month after *Chan-Gutierrez*.

[58] *United States v. Chan-Gutierrez*, 368 F. App'x 536, 538 (5th Cir. 2010).

[59] *Id*. at 539. We have also stated in dicta and without explanation that act and procurement manslaughter require more than "ordinary negligence." *Charlton v. Wainwright*, 588 F.2d 162, 164 (5th Cir. 1979). The question in *Charlton* was whether attempted manslaughter by culpable negligence was a logical impossibility. *Id*. at 163-64. The Court's statements about act and procurement manslaughter were thus unnecessary to its holding. *See id.* at 163. Moreover, the statements only loosely relate to the issue at hand because they are based in the attempt context and do not deal with the "crime of violence" issue. Even were we to give full effect to *Charlton*'s dicta, it would not answer the question whether Florida act manslaughter covers only acts undertaken with recklessness as to death.

[60] *Johnson v. United States*, No. 09-20996-CIV, 2010 WL 4811075, at *1-2, 4 (S.D. Fla. Nov. 19, 2010).

No. 13-20482

*Johnson* and *Chan-Gutierrez*.[61]

IV.

Because § 782.07(1) neither has an element of force nor punishes only generic contemporary manslaughter, it is not a crime of violence for purposes of Sentencing Guidelines § 2L1.2(b)(1)(A)(ii).  It was thus error to enhance Mr. Garcia-Perez's offense level by 16 levels on the basis of his manslaughter conviction.   Had the 16-level "crime of violence" enhancement not been erroneously applied, Mr. Garcia-Perez would have been subject to, at most, an 8-level "aggravated felony" enhancement under § 2L1.2(b)(1)(C).[62]   All else being equal, the smaller enhancement would produce a total offense level of 13, which, coupled with Mr. Garcia-Perez's criminal history category of V, would result in a Guideline range of 30 to 37 months.  This range is 50 to 57 months less than the 87-month prison sentence imposed.

The government bears the burden to "convincingly demonstrate[] both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing."[63]  The government has made no attempt to meet this burden, and we doubt that it could given the substantial difference between the 30 to 37 month Guideline range and the sentence imposed.[64] Notwithstanding the district court's comments about being tempted to depart upwards, the record does not show that the court would have "impose[d] the

---

[61] *Cook v. United States*, No. 8:05-CR-404-T-24TGW, 2011 WL 5420799, at *8-9 (M.D. Fla. Nov. 9, 2011).

[62] Mr. Garcia-Perez does not concede that the 8-level enhancement would apply, and we offer no opinion on the matter.

[63] *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010).

[64] *See, e.g.*, *United States v. Castaneda*, 740 F.3d 169, 175 (5th Cir. 2013) (finding, on plain error review, that error affected substantial rights and the fairness, integrity, and public reputation of the proceeding, due to the substantial difference between the recalculated guidelines and the sentence imposed).

same sentence if there had not been a 16-level enhancement based on the prior crime of violence."[65]  The error was not harmless.

We VACATE the judgment of sentence and REMAND for resentencing.

---

[65] *United States v. Martinez-Flores*, 720 F.3d 293, 300-301 (5th Cir. 2013); *see also Ibarra-Luna*, 628 F.3d at 719 (explaining that although the record indicated the district court would have imposed an above-guidelines sentence even in light of the correct range, it had not been established with "requisite certainty" that the court "would have imposed precisely the same sentence" but for the error).