**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. CARLOS RICARDO MENDOZA-PADILLA, AKA Carlos Mendoza, AKA Carlos Mendoza-Padilla, *Defendant-Appellant.* | No. 15-10051 D.C. No. 4:14-cr-01336-JGZ-BGM-1 OPINION |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted June 15, 2016
San Francisco, California

Filed August 16, 2016

Before: Richard C. Tallman, Richard R. Clifton,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Criminal Law

Vacating a sentence and remanding for resentencing, the panel held that manslaughter, as defined by Florida Statute § 782.07, does not constitute a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A) because Florida manslaughter by act, which does not require a *mens rea* of at least recklessness, criminalizes conduct that goes beyond the contemporary generic definition of manslaughter.

### COUNSEL

Hariette P. Levitt, Tucson, Arizona, for Defendant-Appellant.

Rosaleen O'Gara (argued), Assistant United States Attorney; Robert L. Miskell, Appellate Chief; John S. Leonardo, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## OPINION

TALLMAN, Circuit Judge:

Carlos Mendoza-Padilla pled guilty to one count of illegal re-entry after deportation. The district court applied a 16-level increase to Mendoza-Padilla's base offense level based on his prior manslaughter conviction under Florida law. We now consider in light of United States Supreme Court guidance whether manslaughter, as defined by Florida Statute § 782.07, constitutes a crime of violence under the United States Sentencing Guidelines § 2L1.2(b)(1)(A). We hold that it does not. Accordingly, we vacate Mendoza-Padilla's sentence and remand for resentencing.

## I

Carlos Mendoza-Padilla came to the United States as a teenager in 1998. In 2003, he was convicted of manslaughter under Florida Statute § 782.07. Mendoza-Padilla was deported and re-entered the United States several times. In 2014, Mendoza-Padilla pled guilty without a plea agreement to one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326. The probation officer calculated the base offense level as 8 under the United States Sentencing Guidelines § 2L1.2(a) and increased the base level by 16 under § 2L1.2(b)(1)(A) because he understandably believed that Mendoza-Padilla's Florida manslaughter conviction was a "crime of violence." After an acceptance of responsibility adjustment, the final offense level was 21.

Mendoza-Padilla objected to the 16-level increase in the Presentence Report on the ground that manslaughter under Florida law, as interpreted by the Florida courts, was not a

"crime of violence" under federal sentencing law. At sentencing, the district judge agreed with the probation officer, overruled Mendoza-Padilla's objection, and sentenced him to 57 months in prison. Mendoza-Padilla timely appealed.

## II

Mendoza-Padilla asserts that the application of the 16-level enhancement was improper because Florida manslaughter requires a *mens rea* only of negligence, which does not meet the generic definition of the crime. We review de novo the district court's decision. *United States v. Velasquez-Reyes*, 427 F.3d 1227, 1229 (9th Cir. 2005).

## A

Section 2L1.2(b)(1)(A)(ii) permits a sentencing court to increase a defendant's offense level by sixteen levels if "the defendant previously was deported . . . after . . . a crime of violence." The Application Notes to § 2L1.2(b)(1)(A)(ii) list a number of specifically enumerated offenses that qualify as a "crime of violence," among them generic manslaughter.

> "Crime of violence" means any of the following offenses under federal, state, or local law: murder, *manslaughter*, kidnapping, aggravated assault, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has an element the use, attempted

use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, Application Note 1(B)(iii) (2014) (emphasis added).

The fact that manslaughter is specifically enumerated in the Sentencing Guidelines' definition strongly indicates that the offense of manslaughter qualifies as a "crime of violence" under § 2L1.2(b)(1)(A)(ii). *See United States v. Rodriguez-Guzman*, 506 F.3d 738, 741 (9th Cir. 2007) ("When an offense is specifically enumerated by the Application Notes as a 'crime of violence,' we have consistently drawn the conclusion that the offense is a *per se* crime of violence under the Guidelines."). This does not end our inquiry, however, and the Supreme Court has told us the analysis is not so clear.

To determine whether Florida manslaughter qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A), we apply the categorical approach outlined by the United States Supreme Court in *Taylor v. United States*, 495 U.S. 575, 602 (1990). Applying it, we ask whether Florida manslaughter corresponds to the elements of the generically defined crime under common law "by examining only the fact of conviction and the statutory definition of the prior offense." *United States v. Parnell*, 818 F.3d 974, 978 (9th Cir. 2016) (internal quotation marks omitted). If the statute of conviction is "overinclusive"—meaning that it criminalizes conduct that goes beyond the elements of the generic offense—"*Taylor* authorizes courts to 'go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of the enumerated offense.'" *Id.* (quoting *United States v. Jennings*, 515 F.3d 980, 987 (9th Cir. 2008)). "In such cases, we employ the 'modified

categorical approach' and examine the charging paper and jury instructions to determine whether the defendant was necessarily convicted of an offense corresponding to the [generic offense.]." *Id.* (internal quotation marks omitted). We only apply the modified categorical approach "in the case of a divisible statute." *Id.*

## B

The relevant language of Florida's manslaughter statute provides:

> The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree . . . .

Fla. Stat. § 782.07(1) (2003). The parties' dispute centers on the mental state required by the Florida manslaughter statute, so we focus our inquiry on that issue.

The federal generic definition of manslaughter includes both "voluntary manslaughter (intended homicide in a heat of passion upon adequate provocation) and involuntary manslaughter (unintended homicide under certain circumstance)." *United States v. Gomez-Leon*, 545 F.3d 777, 791 (9th Cir. 2008) (quoting 2 Wayne R. LeFave, *Substantive Criminal Law* § 15.4 (2d ed. 2007)). Under the modern definition, involuntary manslaughter incorporates, at most, a *mens rea* of recklessness. *Id.*; *see also United States v.*

*Dominguez-Ochoa*, 386 F.3d 639, 645–46 (5th Cir. 2004) (same) (surveying all fifty states). We have held that a mental state of recklessness requires:

> [C]onduct that involves both (1) a high degree of risk of death or serious bodily injury, in addition to the unreasonable risk required for ordinary negligence or a gross deviation from the ordinary standard of care and (2) that the defendant be aware of the fact that his conduct creates this risk.

*Gomez-Leon*, 545 F.3d at 791 n.11 (internal quotations omitted). A mental state of recklessness is also distinguishable from "criminal negligence," which requires "only a failure to perceive a risk, as compared to the recklessness requirement of an awareness and conscious disregard of the risk." *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) (internal quotation marks omitted); *see also Gomez-Leon*, 545 F.3d at 791 n.11 ("Gross negligence or criminal negligence requires something more than ordinary negligence, such as one, and in some cases both, of the additional elements.").

## C

We now proceed to compare the mental state required by generic contemporary manslaughter to that required by the Florida manslaughter statute. Section 782.07(1) of Florida's manslaughter statute "establishes three forms of manslaughter (by act, by procurement, or by culpable negligence)." *State v. Montgomery*, 39 So. 3d 252, 256 (Fla. 2010). If Florida manslaughter requires a *mens rea* of at least recklessness, then the statute as a whole falls within the definition of

generic contemporary manslaughter and there would be no error in imposing the 16-level enhancement.

The Fifth Circuit recently addressed this issue in *United States v. Garcia-Perez*:

> We are persuaded that Florida manslaughter by act covers more than just those acts committed with intent to kill or recklessness as to death. Section 782.07(1) thus falls outside the definition of generic contemporary manslaughter.

779 F.3d 278, 289 (5th Cir. 2015). We agree and also now hold that Florida manslaughter by act criminalizes conduct that goes beyond the generic definition of manslaughter.[1]

We turn to Florida case law to determine the mental state required for Florida manslaughter. *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 475–76 (9th Cir. 2015) (en banc). In *State v. Montgomery*, the Florida Supreme Court held that "manslaughter by act" (one of the three forms of Florida manslaughter) "does not impose a requirement that the defendant intend to kill the victim." 39 So. 3d at 256. Rather, "where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter." *Id.* While the Florida Supreme Court in *Montgomery* clarified that intent to kill is not required to

---

[1] Because we find that Florida "manslaughter by act" requires something less than recklessness, we need not decide the mental state that is required to support a conviction for the other forms of manslaughter under Florida law.

prove act manslaughter, the high court was notably silent as to whether a mental state of recklessness is required.

*Montgomery*'s "silence as to recklessness" left intact a long line of cases requiring something *less* than recklessness to support a manslaughter by act conviction. *Garcia-Perez*, 779 F.3d at 285. In 1892, the Florida Supreme Court in *Baker v. State* rejected the theory that manslaughter required the victim's death to have been "one of the reasonable or probable results" of the defendant's acts. 11 So. 492, 498 (Fla. 1892), *overruled on other grounds by Tipton v. State*, 97 So. 2d 277 (Fla. 1957). And in 1930, the Florida Supreme Court in *Gainer v. State* reaffirmed *Baker* and held that "the fact that it did not occur to the defendant that the death of the deceased was a reasonable or probable result of the defendant's assault does not prevent a conviction of manslaughter." 129 So. 576, 577 (Fla. 1930). The state court there upheld the defendant's manslaughter conviction after she shot her husband in the leg, causing him to unexpectedly die of gangrene. *Id.* at 576.

We note, however, that the Florida Supreme Court has made clear that not "every act causally connected with the killing of a human being" falls within the scope of Florida's manslaughter statute. *Tipton*, 97 So. 2d at 282. Rather, the text of Florida's manslaughter statute provides the "guideposts" to determine what acts should be punished as manslaughter. *Id.* at 281. Specifically, § 782.07 provides that a "justifiable homicide"[2] or an "excusable homicide"[3]

---

[2] Under Florida law:

> The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to

cannot be punished by Florida's general manslaughter statute. *Id.* at 281–82. Accordingly, Florida's manslaughter statute ensures that:

> Consideration of the act in its surroundings at the time of its commission, *not of the results alone*, . . . determine[s] criminal responsibility for manslaughter under the Florida homicide statute.

*Id.* at 281 (emphasis added).

Applying similar reasoning, the Florida Supreme Court in *Eversley v. State* held that manslaughter convictions require both cause-in-fact and proximate cause showings. 748 So. 2d 963, 966–67 (Fla. 1999). "In order to establish that a defendant's conduct was the 'cause in fact' of a particular harm, the State usually must demonstrate that 'but for' the defendant's conduct, the harm would not have occurred." *Id.*

---

> commit any felony upon him or her or upon or in any dwelling house in which such person shall be.

Fla. Stat. § 782.02.

[3] Under Florida law:

> Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

Fla. Stat. § 782.03.

at 967.  In addition, proximate cause is determined based on two considerations: "(1) whether the prohibited result of the defendant's conduct is beyond the scope of any fair assessment of the danger created by the defendant's conduct and (2) whether it would be otherwise unjust, based on fairness and policy considerations, to hold the defendant criminally responsible for the prohibited result." *Id.*

While these cases limit the bounds of Florida manslaughter, they do not restrict manslaughter to acts committed recklessly.  Indeed, several Florida courts of appeal have affirmed manslaughter convictions after the victim suffered an unanticipated death after a single, sudden punch.  For instance, in *Hall v. State*, the defendant punched the victim's jaw, causing his sudden death.  951 So. 2d 91, 93 (Fla. Dist. Ct. App. 2007).   The court affirmed the defendant's manslaughter conviction, despite the "very unusual" reaction to the single punch, because manslaughter by act covers "intentional acts that result in unintentional deaths." *Id.*  Similarly, in *Weir v. State*, the court upheld the defendant's manslaughter conviction after the victim unexpectedly suffered a brain aneurysm after a single punch. 777 So. 2d 1073, 1074 (Fla. Dist. Ct. App. 2001).  We think that these "single, sudden punch" cases illustrate that Florida manslaughter broadly covers more than just those acts committed recklessly.

We also note that Florida's Standard Jury Instructions were amended in 2011 to "require[] an intentional act not constituting negligence." *In re Amendments to Standard Jury Instructions in Criminal Cases—Instruction 7.7*, 75 So. 3d 210, 211 (Fla. 2011).  The amendment provides:

> In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act that was not merely negligent, justified, or excusable and which caused death.

*Id.* at 212. This change does not expressly limit manslaughter by act to cases involving an awareness and conscious disregard of the risk of death. *See Garcia-Perez*, 779 F.3d at 288. And, the amendment certainly did not overturn the Florida cases requiring something less than recklessness to prove manslaughter, as the Florida Supreme Court "express[ed] no opinion on [the instruction's] correctness." *In re Amendments*, 75 So. 3d at 211.

Finally, the United States argues that Florida case law following the *Montgomery* decision clarified that the lowest level of *mens rea* required to sustain a conviction under Florida's manslaughter statute is culpable negligence. The government asserts that culpable negligence, under Florida law, is akin to the generic definition of recklessness recognized by our circuit's precedent. The Florida cases cited by the government discuss when a faulty jury instruction on manslaughter by act should be considered fundamental error. *See, e.g.*, *Sullivan v. State*, 50 So. 3d 33, 34 (Fla. Dist. Ct. App. 2010); *Joyner v. State*, 41 So. 3d 306, 306–07 (Fla. Dist. Ct. App. 2010); *Riesel v. State*, 48 So. 3d 885, 886 (Fla. Dist. Ct. App. 2010). These cases hold that "any instruction that includes intent to kill as an element of manslaughter by act is fundamental error" *except* when "the trial court gives the erroneous instruction on manslaughter by act in combination with the instruction on manslaughter by culpable negligence." *Sullivan*, 50 So. 3d at 34. In such cases, fundamental error

does not occur "because it is possible the jury will base its decision only upon the elements of manslaughter by culpable negligence, which [does] not require a finding of intent to kill." *Id.*

We do not read these cases as establishing that culpable negligence is the lowest mental state required to maintain a manslaughter conviction under Florida law. Rather, these cases merely hold that a faulty instruction on manslaughter by act is not fundamental error when the jury is also instructed on an alternate form of manslaughter—manslaughter by culpable negligence. Specifically, these cases involve a situation where the jury found the defendant guilty of second degree murder, but the trial court erred by instructing the jury that the lesser included offense of manslaughter by act requires the *mens rea* of intent to kill. *See, e.g.*, *id.* As the Florida Supreme Court explained, the misinstruction on manslaughter by act could be prejudicial because "[i]f the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense." *Montgomery*, 39 So. 3d at 259 (quoting *Pena v. State*, 901 So. 2d 781, 787 (Fla. 2005)). This potential prejudice can be averted, however, if the jury is correctly instructed on manslaughter by culpable negligence, which does not require a *mens rea* of intent. *See Sullivan*, 50 So. 3d at 34. Accordingly, these cases do not provide further clarity on the mental state required to support a Florida manslaughter conviction.

## III

In sum, under the state's jurisprudence, Florida manslaughter punishes more than only generic contemporary

manslaughter. The government does not argue that the modified categorical approach applies. And the Supreme Court tells us that is the end of our inquiry. *See Descamps v. United States*, 133 S. Ct. 2276, 2286 (2013). Accordingly, we are compelled to hold that Mendoza-Padilla's 2003 manslaughter conviction does not qualify as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). It was therefore error to impose the 16-level enhancement to Mendoza-Padilla's sentence. We vacate Mendoza-Padilla's sentence and remand for resentencing.

**VACATED and REMANDED for resentencing.**