LaROSE, Judge.
Nicole Brewington appeals her conviction and thirty-year sentence for aggravated manslaughter of a child. See § 782.07(3), Fla. Stat. (2006). We affirm, but write to address her claim that the trial court erred in excluding evidence of battered woman syndrome.
The Department of Children and Families (DCF) removed Ms. Brewington’s three children from her care in March 2007 because her boyfriend, Kashon Scott, was selling drugs from her home while caring for the children. Within a month, the trial court returned the children to Ms. Brewington on the conditions that she not allow Mr. Scott to live in her home and not allow Mr. Scott to care for the children. The next day, the police reported to the Abuse Hotline that Mr. Scott battered Ms. Brewington in her home while the children were present. On May 29, 2007, police responded tó a 911 call that a child at Ms. Brewington’s home was not breathing. They transported the three-year-old, Z.J., to the hospital, where he was pronounced dead. Little Z.J. died from beatings he received over a one-to-three-day period at the hands of Mr. Scott.
Officers arrested Mr. Scott for second-degree murder and aggravated child abuse. They arrested Ms. Brewington for aggravated manslaughter of a child. The information alleged that Ms. Brewington:
Between April 04, 2007 and May 29, ..2007 in Lee County, Florida, did unlawfully, by culpable negligence under Florida Statute section 827.03(3), kill Z.J., a human being under thé agé of 18, by failure or omission to provide the child with the care, supervision, and services necessary to maintain the child’s physical and mental health, including, but not limited to, food, nutrition, clothing, shelter, supervision, medicine, and medical services that a prudent person would consider essential for the well-being of the child, contrary to Florida Statute 782.07(3).
At trial, Ms. Brewington’s older children testified that they told her that Mr. Scott was beating the baby. Ms. Brewington saw his bruises, labored breathing, and vomiting, yet she failed to seek medical care. The State presented evidence that the child died from treatable injuries.
Ms. Brewington sought to present evidence that she suffered from battered woman syndrome. Her defense would be *630 that battered woman syndrome caused her to fail to realize exactly what was taking place. She claimed that she did not know Mr. Scott was beating the baby and that she did not realize the child needed a doctor. Once Mr. Scott could no longer hide ZJ.’s condition, he took away her cell phone and prevented her from calling for help. Ms. Brewington meant to use the battered woman syndrome evidence to challenge the mens rea element — culpable negligence. We note that Ms. Brewington testified that Mr. Scott beat her in the past and that she was afraid of him.
The State argued that battered woman syndrome was inapplicable because it is used to explain aggressive action taken in self-defense, sometimes without an imminent threat. In contrast, Ms. Brewington sought to use battered woman syndrome to explain her failure to protect her child. The issue before us is whether a defendant may use such evidence in these circumstances.
 Florida uses the Frye[1] test to guarantee the reliability of new or novel scientific evidence, despite the more lenient federal standard in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[2] Brim v. State, 695 So.2d 268, 271 (Fla.1997). Although many states have adopted Daubert, “Frye ‘remains the rule in a significant minority of states.’ ” Marsh v. Valyou, 977 So.2d 543, 547 (Fla.2007) (quoting David E. Bernstein & Jeffrey D. Jackson, “The Daubert Trilogy in the States,” 44 Jurimetrics J. 351, 352 (2004)).
[The Frye ] standard requires a determination, by the judge, that the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community. ... “[T]he burden is on the proponent of the evidence to prove the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts at hand.... The general acceptance under the Frye test must be established by a preponderance of the evidence.”
Brim, 695 So.2d at 272 (quoting Ramirez v. State, 651 So.2d 1164, 1168 (Fla.1995)). “Any doubt as to admissibility under Frye should be resolved in a manner that minimizes the chance of a wrongful conviction. ...” Ramirez v. State, 810 So.2d 836, 853 (Fla.2001). At trial, the State recognized that battered woman syndrome had been Frye tested and was allowed into evidence in Florida to explain the aggressive action of a victim of abuse. Ms. Brewington sought to expand the reach of battered woman syndrome.
The trial court recognized that battered woman syndrome “perhaps could assist the jury in determining the element of culpable negligence.” However, the trial court ruled that the evidence was inadmissible. The trial court based its ruling on the fact that the defense’s expert witness (1) had not shown that the effect of battered woman syndrome in the context of failing to aid a child was capable of objective testing, (2) had not shown that battered woman syndrome in this context had been subject to peer review and publication, and (3) had not shown that the scientific or psychological community generally accepted battered woman syndrome to negate the mens rea element for a woman charged with failing *631 to protect a child from abuse. We review the trial court’s assessment of Frye under these circumstances de novo. Brim, v. State, 779 So.2d 427, 428 (Fla. 2d DCA 2000) (citing Hadden v. State, 690 So.2d 573, 578 (Fla.1997)).
Some jurisdictions have held battered woman syndrome evidence admissible in analogous circumstances. State v. Stewart, 228 W.Va. 406, 719 S.E.2d 876, 885 (W.Va.2011), held battered woman syndrome expert testimony admissible in a trial for the murder of the defendant’s husband, even though she did not claim self-defense, to explain how it may affect a defendant’s reasoning, beliefs, perceptions, or behavior that may negate an element of the charged crime such as intent or premeditation. Pickle v. State, 280 Ga.App. 821, 635 S.E.2d 197, 201, 203-04 (Ga.Ct. App.2006), held that expert testimony that the defendant suffered from battered person syndrome was admissible to rebut the mental state necessary to establish her intent in her trial for child abuse, battery, and aggravated assault on her child. Mott v. Stewart, No. 98-CV-239, 2002 WL 31017646, at *6 (D.Ariz. Aug.30, 2002), held that exclusion of expert testimony on character traits of battered women, offered to negate the intent element of child abuse and felony murder of a child, deprived the defendant of her right to present a complete defense. Porter v. State, 243 Ga. App. 498, 532 S.E.2d 407, 416 (Ga.Ct.App. 2000), held that an expert psychologist’s battered woman syndrome evidence was admissible to show whether the defendant knew about her husband’s actions as related to the child abuse charge against her.
Other jurisdictions have held expert testimony evidence on battered woman syndrome admissible for purposes other than self-defense. See Arcoren v. United States, 929 F.2d 1235, 1240-41 (8th Cir. 1991) (holding prosecution’s battered woman syndrome evidence admissible to explain domestic battery victim’s recantation of abuse); People v. Brown, 33 Cal.4th 892, 16 Cal.Rptr.3d 447, 94 P.3d 574, 584 (Cal. 2004) (holding no error in admitting prosecution’s expert testimony on battering, under general rule authorizing helpful expert testimony, to explain domestic violence victim’s tendency to recant and other conduct that might otherwise have led to incorrect assumptions); People v. Lafferty, 9 P.3d 1132, 1135 (Colo.Ct.App.1999) (stating admissibility of evidence of battered woman syndrome should not be limited to establishing self-defense; holding it admissible to explain victim’s recantations and inconsistencies about assault); State v. Haines, 112 Ohio St.3d 393, 860 N.E.2d 91, 97-98 (Ohio 2006) (holding battered woman syndrome expert testimony admissible as relevant to victim’s credibility — for jury to understand why victim returned to defendant despite his abuse of her); Trujillo v. State, 953 P.2d 1182, 1187 (Wyo.1998) (holding statute permitting expert testimony on battered woman syndrome in self-defense cases does not preclude its use to explain victim’s behavior; expert testimony describing battered woman syndrome sufferers’ characteristics admissible because it might help jury understand victim’s behavior in returning to defendant after abuse and was based on recognized syndromes); cf. United States v. Peralta, 941 F.2d 1003, 1009-10 (9th Cir.1991) (holding expert testimony about hostages’ reactions admissible to explain their conduct after kidnapping).
“[T]he culpability of parents or caretakers who are themselves victims of the violent behavior of the direct abuser” is an emerging issue. Kathy Luttrell Garcia, Battered Women and Battered Children: Admissibility- of Evidence of Battering and its Effects to Determine the Mens Rea of a Battered Woman Facing Criminal Charges for Failing to Protect a Child *632 From Abuse, 24 J. Juv. L. 101, 104 (2003-04).
Clearly, admission of evidence of battering and its effects will not relieve a battered woman from criminal liability when the factfinder determines that she actively participated in the abuse of a child. It also will not automatically, and might not completely, relieve a battered woman from criminal liability when she fails to protect her child from the abuse of another. It should be admitted, however, when relevant to the issue of whether or not the passive parent actually formed a culpable mental state that is an element of the charged offense.
Effects of battering evidence will help the trier of fact understand the circumstances surrounding the abuse. It will also help the trier of fact to determine the existence and extent of the “passive” parent’s participation in the abuse, the extent of the passive parent’s attempts to protect the child, and the extent to which the actions of the direct abuser prevented the passive parent from doing so. This will help ensure the focus is more appropriately placed on the parent or caretaker having the greater culpability for the violence: the parent who directly inflicted the injuries on the child, and who prevented the “passive” parent from intervening on the child’s behalf.
Id. at 139.
Despite developments in other jurisdictions, the trial court was constrained by Frye. Ms. Brewington’s proffered evidence was inadmissible because she failed to establish, by a preponderance of the evidence, that the theory that battered woman syndrome can negate mens rea for failing to protect a child has been sufficiently tested and generally accepted by the relevant scientific or psychological community. Unfortunately, Ms. Brewing-ton failed to meet the exacting Frye standard. Although this area of the law beckons for further analysis and development in the scientific and legal community, we cannot say, given Florida’s continued adherence to Frye, that the trial court erred.
Affirmed.
CRENSHAW and MORRIS, JJ., Concur.

. Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923).

. Under Daubert, the Frye test of general acceptance in the scientific community is only one factor among several in assessing the admissibility of scientific evidence. Daubert, 509 U.S. at 594, 113 S.Ct. 2786.