NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TRACY ALLEN PETHTEL,                    )
                                        )
            Appellant,                  )
                                        )
v.                                      )        Case No. 2D13-4629
                                        )
STATE OF FLORIDA,                       )
                                        )
            Appellee.                   )
                                        )
_____ )

Opinion filed September 9, 2015.

Appeal from the Circuit Court for Pinellas
County; Michael F. Andrews, Judge.

Howard L. Dimmig, II, Public Defender, and
Thomas Matthew McLaughlin, Special
Assistant Public Defender, Bartow,
for Appellant.

Pamela Jo Bondi, Attorney General, and
Brandon R. Christian, Assistant Attorney
General, Tampa, for Appellee.


LUCAS, Judge.

        Tracy Pethtel appeals his judgment and sentence for aggravated

manslaughter of a child.  On appeal, Mr. Pethtel raises five issues.  In his first issue, Mr.

Pethtel argues that the trial court erred in entering a judgment of conviction against him

for the first-degree felony of aggravated manslaughter of a child based upon the jury's

guilty verdict of the second-degree felony of manslaughter and its special findings. We agree with Mr. Pethtel that the trial court erred, and thus we reverse and remand for resentencing. We affirm on the remaining issues raised in this appeal without further comment.

## BACKGROUND

This case stems from the tragic death of Austin, Mr. Pethtel's ten-week old son. On May 29, 2011, while in Mr. Pethtel's care, Austin stopped breathing. In spite of protracted efforts by first responders and medical doctors to resuscitate him, Austin was ultimately declared brain dead and taken off of life support. Mr. Pethtel was later charged with one count of first-degree felony murder predicated on an act of aggravated child abuse.

Much of the evidence presented at trial revolved around competing theories of the cause of Austin's death. The State argued that Austin had suffered internal injuries, the result, its experts contended, of Mr. Pethtel's inflicting some form of physical trauma on Austin, such as throwing or dropping the child against a pillow or crib bedding. The defense's expert disputed the State's theories about the existence or extent of the child's physical injuries and opined that the victim died from respiratory arrest caused by either apnea, a choking event, or a lung infection.

At the conclusion of the trial, the trial court instructed the jury on the elements of felony murder predicated on aggravated child abuse as well as the lesser-included offense of manslaughter. In the latter regard, the trial court further instructed the jury on the separate theories of voluntary and involuntary manslaughter; however, the verdict form agreed upon by the State and the defense did not differentiate between

2

the two forms of manslaughter. The jury returned a verdict acquitting Mr. Pethtel of the felony murder charge but finding him guilty of manslaughter. The jury also made special findings that Mr. Pethtel was the victim's caregiver and that the victim was under the age of eighteen. Because of the verdict form that was used, the jury did not specify whether the manslaughter was the result of Mr. Pethtel's culpable negligence or his intentional act. Nevertheless, based on the jury's special findings and the assumption that it was permitted to "enhance" Mr. Pethtel's conviction, the trial court entered a judgment of conviction against Mr. Pethtel for aggravated manslaughter of a child and sentenced him to twenty-five years in prison.

Following his conviction and sentence, Mr. Pethtel filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion in which he argued that he could not be convicted of aggravated manslaughter of a child unless the jury's verdict specifically found him guilty of manslaughter by culpable negligence. The court disagreed and denied his motion. Although the court recognized that the statute defining aggravated manslaughter of a child is indeed premised on culpable negligence, the court concluded that the jury's verdict, when read as a whole, appeared to convict Mr. Pethtel of manslaughter on that basis. As explained below, that assumption was erroneous and compels us to reverse the trial court's judgment and sentence.

**ANALYSIS**

We will address two issues in turn. The first–whether Mr. Pethtel could be convicted of a crime without a jury's finding on each and every element of that crime–is fairly narrow and resolves the case at bar. The second, broader issue was not raised below or on appeal. Nevertheless, it warrants some explanation, because it concerns

3

what may have been a fundamental misconception by the trial court, the State, and the defendant about how the crime of aggravated manslaughter of a child is properly presented and adjudicated.

## I.    Standard of Review

Questions of law, such as whether an adjudication of guilt conforms to a jury verdict, are reviewed de novo.  See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So. 2d 317, 329 (Fla. 2005) (holding that pure questions of law are reviewed de novo); cf. Williams v. State, 511 So. 2d 1017, 1019 (Fla. 2d DCA 1987) (reversing a trial court's adjudication of guilt where it violated the established rule of law that the judgment of the trial court must conform to the jury's verdict).  Likewise, our review of the legality of a sentence is de novo.  State v. Valera, 75 So. 3d 330, 331-32 (Fla. 4th DCA 2011).

## II.    The Jury's Findings did not Support the Judgment of Conviction

We begin by comparing the statutory offenses and the elements of the crimes at issue.  Mr. Pethtel was charged with first-degree felony murder predicated on an act of aggravated child abuse.  As the court instructed the jury in this case, aggravated child abuse under section 827.03(1)(a)(3), Florida Statutes (2010), occurs when a person:

> Knowingly and willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.
>
> Child abuse is then defined under section 827.03(1)(b) as:
>
> 1.  Intentional infliction of physical or mental injury upon a child;
> 2.  An intentional act that could reasonably be expected to result in physical or mental injury to a child; or

4

3. Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury to a child.

The trial court also instructed the jury on the lesser-included offense of manslaughter. Section 782.07(1), Florida Statutes (2010), defines manslaughter, in relevant part, as "[t]he killing of a human being by the act, procurement, or culpable negligence of another." Florida law thus creates two general categories of manslaughter: voluntary manslaughter, which arises from a voluntary act or procurement, and involuntary manslaughter, which is premised on culpable negligence. See Bolin v. State, 8 So. 3d 428, 430 (Fla. 2d DCA 2009). The two categories of manslaughter differ markedly with respect to criminal intent. Id. "Whereas voluntary manslaughter is a crime of intent, involuntary manslaughter is not." Id. The trial court properly instructed the jury on both voluntary and involuntary manslaughter, finding that the facts of the case could be interpreted to support a conviction under either theory.

Finally, the offense that the trial court entered its judgment and conviction on, aggravated manslaughter of a child, is defined under section 782.07(3) as: "A person who causes the death of any person under the age of 18 *by culpable negligence* under s. 827.03(2)(b) commits aggravated manslaughter of a child, a felony in the first-degree . . . ." (emphasis added). As is clear from the statute's language, guilt of this crime is predicated on the death of a child caused by the defendant's culpable negligence. § 782.07(3); cf. Ibeagwa v. State, 141 So. 3d 246, 247 (Fla. 1st DCA 2014) (explaining that aggravated manslaughter of a child requires a finding of culpable negligence that must be determined upon the facts and the totality of the circumstances

5

in each particular case). Thus, the crime of aggravated manslaughter of a child is premised on involuntary, not voluntary, manslaughter.

While finding Mr. Pethtel guilty of manslaughter, the jury could not indicate which type of manslaughter Mr. Pethtel had committed on the verdict form they were provided. The trial court nonetheless entered a judgment of conviction against Mr. Pethtel for the offense of aggravated manslaughter of a child based upon the jury's special findings that the victim was a child and Mr. Pethtel was his caregiver. Recognizing there was no finding of Mr. Pethtel's negligence anywhere within the verdict, the trial court upon review of Mr. Pethtel's 3.800(b)(2) motion nevertheless reasoned that since the jury had acquitted Mr. Pethtel of his felony murder charge, a crime which required an element of intent, but convicted him of manslaughter, a crime that may hinge on either intent or culpable negligence, the jury must have ruled out voluntary manslaughter and based their manslaughter verdict on culpable negligence. That conclusion, while perhaps intuitive, was erroneous for two reasons.

First, it is a fundamental tenet of criminal law that a defendant's criminal conviction can only be sustained if the jury has found all of the elements of the crime. See State v. Sigler, 967 So. 2d 835, 843 (Fla. 2007). The jury's findings must be explicit. It is improper for a court to infer that a jury determined a criminal element that was not expressed within a verdict. Cf. Apprendi v. New Jersey, 530 U.S. 466 (2000) (holding that every fact necessary for a conviction, other than criminal history, must be submitted to a jury and determined by the jury beyond a reasonable doubt); Santana v. State, 931 So. 2d 954, 956 (Fla. 3d DCA 2006) (reversing the trial court's imposition of a twenty-year minimum sentence for discharge of a firearm during an aggravated battery

6

where the trial court inferred that the defendant discharged a firearm from the verdict's additional finding of guilt for a separate count of shooting or throwing a deadly missile). That is precisely the proscribed course of reasoning that the trial court engaged in here. Faced with a verdict that was silent about the element of culpable negligence, the court inferred that element from the verdict's findings. Such a conviction by deduction violates the fundamental principles of Apprendi, Sigler, and Santana, and cannot stand.

Secondly, the inference the trial court utilized was fallacious. The trial court's underlying assumption that acquittal of the felony murder charge constituted some finding about Mr. Pethtel's intent for purposes of manslaughter conflated differing kinds of intent between different crimes. With respect to the felony that predicated Mr. Pethtel's murder charge, aggravated child abuse, the requisite intent underlying the offense of child abuse turns on the "[i]ntentional infliction of physical or mental injury," "[a]n intentional act that could reasonably be expected to result in physical or mental injury," or "[a]ctive encouragement of any person to commit an act that results or could reasonably be expected to result in physical or mental injury" to a child. § 827.03(1)(b), Fla. Stat. (2010). Voluntary manslaughter, on the other hand, carries a much broader ambit of intent. To be guilty of this kind of manslaughter, a defendant need not actually intend to kill or injure a victim. State v. Montgomery, 39 So. 3d 252, 255-57 (Fla. 2010); Mueller v. State, 100 So. 3d 47, 49 (Fla. 2d DCA 2011). Nor does manslaughter by intentional act require an element of foreseeability between the defendant's act and the resulting death. Cf. Maynard v. State, 660 So. 2d 293, 294 (Fla. 2d DCA 1995) (holding that defendant was not entitled to instruction that to be convicted of manslaughter, "the act must be of such a nature that a reasonably prudent person could foresee its

7

resulting in the death of [the victim]").  Thus, while the crimes of aggravated child abuse and voluntary manslaughter each include an element of intent, the object of the intent is different for each crime.  It was by no means an inescapable conclusion that the jury's acquittal of the one crime clarified the category of the other.

The jury found Mr. Pethtel guilty of manslaughter without clarifying which kind.  Even with the additional findings that Austin was under eighteen, and that Mr. Pethtel was his caregiver, it is clear from the plain language of section 782.07(3) that Mr. Pethtel could only be guilty of aggravated manslaughter of a child if Austin's death was the result of Mr. Pethtel's culpable negligence.  The jury made no such finding.[1] His judgment and sentence must, therefore, be reversed.

## III.     Whether Aggravated Manslaughter of a Child is an Enhancement, a Reclassification, or its own Criminal Offense

There is another problem, an errant strand of reasoning, that seems to bind the present controversy.  Because it was neither raised nor argued at trial or on appeal, we are precluded from resolving it here.  See Haverty v. State, 258 So. 2d 18,

---

[1]Indeed, Mr. Pethtel was never charged with aggravated manslaughter of a child.  His indictment included only the charge of first-degree felony murder predicated on aggravated child abuse.  As will be explained more fully in the next section, aggravated manslaughter of a child appears to be a separate, substantive criminal offense, not, as the parties and the trial court assumed, an "enhancement" of the crime of involuntary manslaughter.  It would then follow that if Mr. Pethtel was never charged with aggravated manslaughter of a child (and it was not a lesser included offense for felony murder), he could not have been convicted of that crime, regardless of any additional findings made by the jury.  See State v. Gray, 435 So. 2d 816, 818 (Fla. 1983); Mauldin v. State, 696 So. 2d 801, 801 (Fla. 2d DCA 1997).  Interestingly, the trial judge mentioned this incongruity in the charging instrument during the proceedings below, but neither party chose to discuss it or assert a position on it, either before the trial court or in this appeal.  Much like the question of reclassification we will discuss next, their silence on this issue places it beyond our ability to decide in the appeal before us.

8

19-20 (Fla. 2d DCA 1972) (holding that questions can only be heard and considered by an appellate court if properly reserved in lower court and assigned as error upon appeal); Lightsee v. First. Nat'l. Bank of Melbourne, 132 So. 2d 776, 778 (Fla. 2d DCA 1961) (holding that an appellate court cannot pass upon issues other than those properly presented on appeal). Nevertheless, the issue certainly merits attention.

Throughout the proceedings below and in this appeal, the parties have broached their arguments over Mr. Pethtel's conviction of aggravated manslaughter of a child in terms of an "enhancement" and whether there were sufficient findings for the circuit court to "enhance" the jury's manslaughter verdict, a second-degree felony, to the first-degree felony of aggravated manslaughter of a child. Relying on Florida Standard Jury Instruction for Criminal Cases 7.7 (which characterizes section 782.07(3) as an "enhanced penalty" of involuntary manslaughter)[2] the litigants and the trial court tacitly

---

[2]Florida Standard Jury Instruction for Criminal Cases 7.7 provides that if a jury finds that a defendant has committed manslaughter by culpable negligence, his or her conviction can be enhanced to one of the aggravated varieties of manslaughter based on the jury's special findings. A review of the Supreme Court Committee on Standard Jury Instructions in Criminal Cases' report published in connection with the instruction's proposal demonstrates that this amended jury instruction was drafted in response to the 2002 amendment to section 782.07. Fla. Sup. Ct. Comm. on Std. Jury Instr. in Criminal Cases, Report No. 2006-1 (2006) (on file with Clerk, Fla. Sup. Ct.), available at http://www.floridasupremecourt.org/clerk/comments/2006/06-909%20Report%20(SJICriminalC)%205-2-06.pdf.
In the report, the Committee cites to chapter 2002-74, Laws of Florida, which added subsection (4) to section 782.07. Id. It appears to us that in amending the instruction, the Committee may have read too much into the prefatory language of chapter 2002-74, Laws of Florida, which stated that one of the purposes of the act was to "[provide] an enhanced penalty." We suspect that the Committee misconstrued the Florida Legislature's use of the phrase, "enhanced penalty" in this context. "Enhanced penalty" was likely meant in a more colloquial sense—that is, as a higher punishment— and in reference to the statute being amended, such that the newly enacted subsection (4) would conform with the penalties already in place in the other subsections for aggravated manslaughter of an elderly or disabled person and aggravated manslaughter of a child. In other words, the Legislature sought to make it clear that

9

assumed that the crime of aggravated manslaughter of a child is simply an enhancement of the crime of involuntary manslaughter.  We believe this assumption misconstrues, on multiple levels, the actual statutory offense the Legislature crafted in section 782.07(3).

Enhancements refer to the authority of a judge to impose a more severe sentence for a convicted offense when certain factual findings have been made.  See Jackson v. State, 515 So. 2d 394, 395-96 (Fla. 1st DCA 1987) ("An enhancement statute is commonly associated with the province of the judge in sentencing . . . .").  Statutes authorizing enhancements do not add an element that would create a separate, substantive crime, but simply authorize a judge to impose a more severe sentence based on certain factual findings.  See, e.g., Mills v. State, 822 So. 2d 1284, 1288-89 (Fla. 2002) (holding that section 784.07 was not an enhancement statute because the victim's status as a law enforcement officer was an element of a reclassified crime).

That is not what happened in Mr. Pethtel's case.  When the circuit court entered a judgment of conviction for a first-degree felony based upon a second-degree felony verdict, it did not enhance Mr. Pethtel's sentence; rather, the court effectively *reclassified* his conviction to another crime of a higher degree.  See Cooper v. State, 455 So. 2d 588, 589 (Fla. 1st DCA 1984) ("Reclassification speaks to the degree of the crime charged, and in the metaphysical legislative application, appears to attach at the

---

aggravated manslaughter by culpable negligence of an officer, firefighter, emergency medical technician, or paramedic, carried the same higher punishment as the other types of aggravated manslaughter already defined in the manslaughter statute.

time the indictment or information is filed . . . ."). Reclassification of a criminal conviction from one degree to a higher degree stems from an express and explicit grant of statutory authority. Cf. Spicer v. State, 615 So. 2d 725, 726 (Fla. 2d DCA 1993) (reversing reclassification of robbery with a mask conviction because "[p]enal statutes must be construed in terms of their literal meaning . . . . [I]f the legislature had intended section 775.0845 [Florida Statutes (1989)] to reclassify offenses, it would have so stated . . . ."); Cuthbert v. State, 459 So. 2d 1098, 1099 (Fla. 1st DCA 1984) (reversing improper reclassification of aggravated battery conviction from second-degree to first-degree felony based on defendant's habitual offender status and noting "Section 775.084 only authorizes the imposition of sentences which exceed the normal statutory maximum. The crimes are not reclassified."). Although the terms are occasionally confused, courts considering the imposition of an enhancement or a reclassification must remain mindful that they are separate, and that each function operates independently of the other. State v. Smith, 470 So. 2d 764, 765-66 (Fla. 5th DCA 1995) (holding that section 775.087(1), Florida Statutes (1983), providing for reclassification of a crime to a higher degree for possession or use of a deadly weapon, and section 775.087(2), Florida Statutes (1983), providing for a minimum prison term, are not alternative methods of enhancement and must operate independently of each other); Cooper, 455 So. 2d at 589 ("[W]e are critical of the commingling of the terms 'reclassification' and 'enhancement.' ").

Having considered each of these terms and their respective functions, the knot of the problem can be made clear. There is no authority in statute, case law, or

even legislative history that aggravated manslaughter of a child is an enhancement or reclassification of the crime of manslaughter.

A plain reading of section 782.07, Florida Statutes (2010), demonstrates that each variety of manslaughter enumerated in that section stands as a distinct criminal offense. Indeed, section 782.07(3), "Aggravated Manslaughter of a Child," does not mention reclassification or enhancement whatsoever but instead unequivocally presents the crime as its own chargeable offense. Compare § 782.07, Fla. Stat. (2010) (listing manslaughter, aggravated manslaughter of an elderly person or disabled adult, aggravated manslaughter of a child, and aggravated manslaughter of an officer, a firefighter, an emergency medical technician, or a paramedic as separate crimes), with § 775.085, Fla. Stat. (2010) (explicitly providing for reclassification of any crime by one degree where the crime was based on prejudice against the victim for their race, color, ancestry, ethnicity, religion, sexual orientation, national origin, homeless status, mental or physical disability, or advanced age), and § 784.07, Fla. Stat. (2014) (expressly authorizing reclassification of an assault or battery to a higher degree based on the victim's status as a law enforcement officer, firefighter, emergency medical care provider, public transit employee or agent, or other specified officer), and § 775.0845, Fla. Stat. (2009) (expressly authorizing reclassification of almost any offense by one degree where the defendant wore a mask during the commission of the crime), and § 775.087, Fla. Stat. (2014) (explicitly providing for reclassification of most felonies by one degree where the defendant possessed or used a weapon during the commission of the felony); see also Brewington v. State, 98 So. 3d 628, 629 (Fla. 2d DCA 2012) (in which

the defendant was charged by information with the offense of aggravated manslaughter of a child under section 782.07(3)).

The history of the statute's amendment also dispels any notion that the Legislature intended to create anything other than a separate criminal offense for aggravated manslaughter of a child. Prior to 1996, section 782.07 made no reference to aggravated manslaughter. During the 1996 Regular Session, the Florida Legislature passed chapter 96-332, § 12, Laws of Florida, adding two new subsections to Florida Statute section 782.07: subsection (2), creating a crime of aggravated manslaughter of an elderly person, and subsection (3), creating a crime of aggravated manslaughter of a child. See Ch. 96-332, § 12, at 1774-75, Laws of Fla. The introduction to chapter 96-322, Laws of Florida, explains that the amendment to section 782.07 was for the purpose of "defining and providing penalties for the *offenses* of 'aggravated manslaughter of an elderly person or disabled adult' and 'aggravated manslaughter of a child.' " Id. at 1762 (emphasis added).

Thus, the trial court, the State, and the defendant have labored under a misunderstanding of this criminal offense. Section 782.07, Florida Statutes (2010), does not present aggravated manslaughter of a child as a reclassification, nor can it reasonably be deemed an enhancement of a manslaughter sentence. Although we are precluded from so holding, we do not believe the circuit court would have had the lawful authority to reclassify Mr. Pethtel's offense under the statute. Cf. State v. Wershow, 343 So. 2d 605, 608 (Fla. 1977) ("Nothing is to be regarded as included within [a criminal statute] that is not within its letter as well as its spirit; nothing that is not clearly and intelligently described in its very words, as well as manifestly intended by the

13

Legislature, is to be considered as included within its terms . . . ." (internal citation omitted)). That issue is not before us for resolution today, but recognizing the confusion that appears to have come from the parties' reliance on Florida Standard Jury Instruction for Criminal Cases 7.7, we would commend it to the Supreme Court Committee on Standard Jury Instructions in Criminal Cases for their consideration.

## CONCLUSION

Accordingly, we affirm in part, reverse in part, and remand for adjudication and resentencing consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

NORTHCUTT, J., Concurs.
KHOUZAM, J., Concurs specially.

KHOUZAM, Judge, Specially concurring.

I agree that Mr. Pethtel's adjudication of guilt for aggravated manslaughter of a child must be reversed. Mr. Pethtel was charged with first-degree felony murder predicated on aggravated child abuse. The indictment in this case did not charge him with aggravated manslaughter of a child. Because Mr. Pethtel was not charged with aggravated manslaughter of a child, regardless of any additional findings made by the jury, he could not be convicted of that crime. See State v. Gray, 435 So. 2d 816, 818 (Fla. 1983); Mauldin v. State, 696 So. 2d 801, 801 (Fla. 2d DCA 1997).

I join in the majority's conclusion that Florida Standard Jury Instruction for Criminal Cases 7.7 is misleading because it incorrectly characterizes section 782.07(3),

14

Florida Statutes, as an "enhanced penalty" of involuntary manslaughter. Relying on this instruction, the litigants as well as the trial court incorrectly assumed that involuntary manslaughter could be enhanced to aggravated manslaughter of a child if the jury made certain findings. But as explained above, there were no additional findings that the jury could have made that would have given the trial court the authority to make such an enhancement. It would behoove the Supreme Court Committee on Standard Jury Instructions in Criminal Cases to address this misleading instruction.

15